Robinson and Husband vs. Atkins.

## No. 13,745.

Mrs. Nina Robinson and Husband vs. James W. Atkins.

### Syllabus.

Plaintiff sought to recover a tract of land (included in the boundaries of a place known as Lovely Point plantation) which she avers was not included within the boundaries of the property mortgaged and afterwards sold in foreclosure proceedings.

While the boundaries do not touch the land in question at all points, they none the less indicate well enough that the land claimed is part of the Lovely Point plantation. The evidence shows that Lovely Point plantation was mortgaged, and that this plantation was sold with boundaries, as set forth in the act of mortgage. The name of the plantation, the boundaries, and the United States' divisions and sub-divisions, one considered with reference to the other, correctly described the land in controversy, and show that it was mortgaged and sold, as alleged by the defendant.

After this first owner had parted with his title, he could not be heard to the end of destroying the validity of the title which he transferred to a third person, under whom defendant holds. He is bound by his own deed of transfer, even though he is not bound in warranty, to an extent at least by which he is prevented from seeking to destroy the validity of the title he chose to transfer.

APPEAL from the Second Judicial District, Parish of Bossier—
Watkins, J.

A. D. Land, Jr., T. T. Land, and Thigpen & Foster, for Plaintiff, Appellant.

Alexander & Wilkinson and Joannes Smith for Defendant, Appellee.

The opinion of the court was delivered by

Breaux, J.    Plaintiff sues for the recovery of a tract of land described as being the east half of east half of section five, in township fifteen, range eleven west, containing one hundred and sixty acres.

The facts of the case are that plaintiff mortgaged her plantation known as the "Love Point Plantation" to defendant's brother, in 1886. This plantation was described in the act of mortgage as bounded west by Red River, north by Atkins' plantation, called Knox Point, south by the Furniss plantation, and on the east by swamp lands near Flat River and Bisteneau Lake, embracing these and other lands. Here, in the deed, follows a specific description of the land by townships, ranges, sections, quarter sections, and lots, in all, containing eighteen hundred acres, more or less. The following is a sketch of the land:

In 1895 the mortgagee parted with the notes identified with, and secured as to their payment by, this mortgage; and his transférree, J. V. Hughes, foreclosed and bought the "Lovely Point plantation" for an amount less than the sum due and secured by the mortgage in question. The adjudicatee, Hughes, some time after sold the land here claimed to N. L. Lindsley for the price of one thousand dollars. The deed was a quit claim deed. He, Lindsley, about the same time, obtained a quit-claim deed to the land from the owner of the adjacent tract, known as "Knox Point," so that he had two titles to that one tract.

Lindsley sold the same property to the defendant for the sum of one thousand dollars. Plaintiff charges that defendant and N. L. Lindsley entered into a conspiracy to acquire this land, in fraud of her rights.

Defendant, in his answer, sets up that he bought the property at sheriff's sale after having consulted a lawyer who advised that the title was good; that the land was covered by the sheriff's deed, as its recitals included "Lovely Point plantation," and other lands. The District Court decided that the defendant is the owner of the land in controversy and rejected plaintiff's demand. From this judgment, plaintiff appeals.

The land in question was the property of plaintiff (from whom title is derived) at the date that she executed the mortgage before mentioned in favor of defendant's brother as mortgagee. The witnesses who have been examined upon the subject testify in a most direct manner that it was always looked upon and considered as a part of "Lovely Point plantation." The plantation of plaintiff was known under that name and the lands adjacent were known as Lovely Point lands. The identification of this tract as forming a part of the plantation is complete.

We do not understand that plaintiff sought to prove that the land in question was not known as forming part of the plantation, at any rate the testimony of her own witnesses would not sustain the contention that it is not known as one of the tracts of that plantation. Some importance must be given even to a mere name, for name in itself is a designation. To men, houses, animals, plants, metals, locations, and lands are given names for their identification and they sometimes serve as *descriptio loci aut descriptio personae*. As relates to mortgages, the name of the property mortgaged is taken and considered in several decisions of this court as almost sufficiently descriptive, if not entirely so. In the following cases, effect, in matter of description, was given to

the name of the places as identifying the property mortgaged. Levy vs. Ward, Administrator, 33 Ann. 1033; Dickson vs. Dickson, 36 Ann. 870; Bryan vs. Wisner, 44 Ann. 832. The Dickson case cited *supra* is particularly in point. In that case, the court said: "If the language of the act makes it clear that it was the Rush Point plantation that was mortgaged, then the numbers of the legal subdivisions named in the act become secondary and merely descriptive of the subject of the contract, the thing mortgaged."

In the act of mortgage here, the "Lovely Point plantation" was described as embracing "these and other lands." The tract in controversy being adjacent to the main body of the land, the proposition that it is not embraced within the description can not, in our view, be sustained in view of the testimony that this particular tract in dispute has always been known as forming part of "Lovely Point plantation." The question arises, if the phrase quoted does not cover the land adjacent and known by the name before mentioned, what does it cover? The whole title, were we to sustain plaintiff's contention, would then be restricted to the subdivisions of the United States survey, which was evidently not the intention of the parties.

In addition to the description by name, the mortgage contains a general description by boundary. True, this general boundary is not contiguous to plaintiff's former plantation at every point along the boundary lines, but it is not an erroneous description.

It locates the lands with sufficient certainty to be located by any one who is at all familiar with locating lands. For instance, one of the legal subdivisions of the plantation, as described in the mortgage, is north half of section eight. Immediately above the northern lines of this section is the land here in controversy. The boundary north of the "Lovely Point plantation," as given in the deed of mortgage, is Plat river or the "Knox Point plantation." This, as we take it, completely identifies the tract claimed by the plaintiff, when considered in connection with the name given to the property and the boundaries as set in the deed. As to the northern boundary, we think it is sufficiently given. As to the western boundary, true, a good portion of Red river, referred to in the act of mortgage as the western boundary, does not flow along the entire boundary, yet it touches that boundary enough to exclude the idea of a prejudicial error in that boundary.

When defendant offered to prove by witnesses that the land in dispute (E. ½ of E. ½, Sec. 8) was part of the plantation in question,

plaintiff objected to the introduction of the testimony to vary as .she contended, contradict, or amplify the description of property mortgaged, on the ground that the property to be mortgaged was described by boundary and by United States subdivisions, and that while it might be shown that the land in dispute was covered by the boundaries given, defendant could not consistently claim that the mortgage was correct and accurate and at the same time offer to prove that the deed of mortgage intended to cover more and other lands than those expressly mentioned. The proposition, we think, would be sustainable if the defendant claimed other lands than those forming part of "Lovely Point plantation."

But defendant specially alleges that while the land "was not specifically described by numbers," it was included in the act of mortgage and formed part of the "Lovely Point plantation," and he claims that the land in dispute was part of "Lovely Point plantation." The purpose of the testimony was to prove that it formed part of her plantation, as alleged.

The testimony was admissible to prove the boundaries of that plantation and the different tracts it embaced. It did not, in that respect, contradict or vary the deed by which the defendant holds title, nor did the testimony have the effect of making a title, but it went to prove the title transferred. The record does not disclose any attempt on the part of the defendant or his ancestor in title to take undue advantage as charged. Plaintiff's mortgagee, J. V. Hughes, who foreclosed and became the owner, thought that, perhaps, there was an equitable claim of some sort to the land and that, he testifies, is why he sought by getting rid of the land, as he did, to avoid all controversy in regard to it. But he adds, as a witness, "I did think when I bought this land at sheriff's sale I was buying all of the land owned by Mrs. Robinson at or near Lovely Point plantation."

No oral testimony tending to destroy a title to immovable property is admissible, and although the witness may have had some misgivings as to the title he transferred, after the transfer had been made, he could not be heard by oral testimony to attack its validity, particularly in the absence of proof of bad faith, fraud, and collusion.

There is not, in our view, any merit in plaintiff's contention, arising from her averment that the sale to the defendant was made with the intention to circumvent her in her attempt to recover the property.

The two deeds obtained by defendant's author to this property, grew

out of the desire, as we take it, of this vendor, to fortify his right as an owner by taking two deeds to the property, although as to one of these vendors, there was no apparent right.

"Lovely Point plantation" having been mortgaged and the foreclosure having resulted in a title to the whole place, we are firm in the conclusions that evidence shows that the land in dispute is part of that plantation. It, therefore, only remains for us to affirm the judgment.

It is ordered, adjudged and decreed that the judgment appealed from is affirmed.

Rehearing refused.