(58 South. 150.)

No. 18,854.

GANUCHEAU v. MONNOT et al.

(March 11, 1912. Rehearing Denied April 8, 1912.)

*(Syllabus by Editorial Staff.)*

1. EJECTMENT (§ 94*)—SUFFICIENCY OF EVIDENCE—IDENTITY OF LAND IN DISPUTE—COPY OF PLAT.

Evidence, in an action to try the disputed possession to land, in which defendant introduced a plat as a true copy of a plat according to which the common author in title had made a donation of the land to defendant's author in title, *held* sufficient to completely identify the land in dispute with the donation made by the common author in title to defendant's author in title.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. § 279; Dec. Dig. § 94.*]

2. ADVERSE POSSESSION (§ 70*)—POSSESSION OF LAND—PRESCRIPTION.

Possession of land of the character required by prescription, had under a title translative of property and continued for more than 10 years, gives title by prescription.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 394–414; Dec. Dig. § 70.*]

3. BOUNDARIES (§ 3*) — DESCRIPTION OF PROPERTY—DESCRIPTION AS BOUNDED BY OTHER PROPERTIES.

Where land in dispute was conveyed as the "S. W. ¼ of section 32," followed by a description bounding it on the north, south, east, and west by land of other owners named, and the description must include the disputed land, in order not to make the boundary on the east entirely erroneous, it will be held to include the disputed land.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

4. BOUNDARIES (§ 3*)—CONSTRUCTION—DESCRIPTION OF PROPERTY.

Where a deed is erroneous, both as to the acreage and the boundary on one side, but the description concludes with a reference to the title under which the vendor holds, the property intended to be conveyed was that identified by the reference.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

5. DEEDS (§ 114*)—CONSTRUCTION—DESCRIPTION.

A sale of a specific tract of land under fences and described by boundaries is a sale per aversionem.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 316–322, 326–329; Dec. Dig. § 114.*]

6. BOUNDARIES (§ 26*)—NATURE AND FORM OF REMEDY.

An action not involving the proper location of a boundary line, but involving title vel non to the N. ½ of the S. W. ¼ of a section of which defendant was in possession, and to which plaintiff asserted title, is a petitory action, and not an action in boundary.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 139, 140; Dec. Dig. § 26.*]

7. BOUNDARIES (§ 3*) — CONSTRUCTION — UNITED STATES SURVEYS—DESCRIPTION BY METES AND BOUNDS.

Where a discrepancy exists in an act of sale between the description according to United States surveys and that by metes and bounds, or by other designations, as to which the parties are less likely to have made a mistake than in their reference to the numbers and lines of the United States surveys, the description by metes and bounds controls.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Charles A. O'Neill, Judge.

Action by Albert Ganucheau against Mrs. Heloise H. Monnot and another. Judgment for plaintiff, and defendant Monnot appeals.

Judgment set aside, and plaintiff's action dismissed.

Foster, Milling, Brian & Saal, for appellant. Emmet Alpha, for appellee.

PROVOSTY, J. In 1872 Mrs. Wid. Grevemberg caused her plantation to be surveyed and divided into 42 lots, and a plat to be made of the survey, by a civil engineer named A. G. Fields. In 1879 she executed a notarial act, in which she made to each of her children and grandchildren a donation of one or more of the lots. In this notarial act the several lots thus donated were not described otherwise than by the numbers and coloring, by which they could be identified on the said plat, and the plat was annexed to the act for greater fullness of description, and was paraphed by the notary for identification. Unfortunately it was never recorded, and has been lost. Hence this suit.

One of the donees was Adrian Dumartrait, the author in title of the defendant. He received lots 20, 21, 32, 33, 34, 35, 36, 37, 38, 39, and 42, shaded purple on the plat. The whole question in this case is as to whether the lot 42 thus donated was the land in dispute. In its lines, this lot 42 is identical with N. ½ of S. W. ¼ of fractional section 32, township 13 S., range 8 E., W. D. of La.

Plaintiff claims that lot 42 on the A. G. Fields plat was not the N. ½ of S. W. ¼ of section 32, but that the N. ½ of S. W. ¼ of section 32 continued to belong to Mrs. Wid. Grevemberg, and that she, some years later, made an oral donation of the entire S. W. ¼ of section 32 to her son, Charles Grevemberg; and that after her death her heirs, including Adrian Dumartrait, defendant's author in title, confirmed this oral donation by the execution of a notarial act to that effect.

This act of confirmation is in the form of a sale, and does, sure enough, describe the property as the "S. W. ¼ of section 32, T. 13 S., R. 8 E., W. D. of La.," and thus supports the contention of plaintiff; but it adds the following:

"The said tract of land is bounded, as follows: North by land of A. Dumartrait, south by land of S. R. Roane, east by land of Murphy J. Foster, and west by land of John Murphy."

And the defendant contends that the latter description, by metes and bounds, controls the former, according to the maps of the United States surveys.

Defendant has produced a plat, purporting to be a copy of that made by A. G. Fields and annexed to the act by which Mrs. Wid. Grevemberg made the donation to her children and grandchildren. On this copy of plat, the land in dispute is shaded purple, and is numbered 42.

Mr. Moresi, an entirely disinterested witness, testified that his father, being owner of a considerable portion of the lands donated by Mrs. Wid. Grevemberg to her children and grandchildren, which lands depended upon the A. G. Fields plat for identification with the lands included in the said donation, borrowed this Fields plat with a view to having a copy made; and that his father procured this copy to be made by W. Bernhardt, civil engineer; that he (the witness) saw W. Bernhardt make this said copy from the Fields original; that, wishing to have a blueprint copy made of this copy, he took to New Orleans what he thought was the copy, but which turned out to be the original, and accidently lost it.

Mr. Moresi's statement as to this Fields plat having been thus borrowed for the purpose of having a copy made is fully corroborated by Mr. Bernhardt, who testifies that the plat he copied from was certified and signed by A. G. Fields, whose handwriting and signature he was perfectly familiar with, and is also corroborated by the lady from whom the Fields plat was borrowed.

But the plat produced in court was not in its entirety the work of Bernhardt. All the lines and legends and the certificates and the figures within each lot, showing its area, including the lot in dispute, and the numbering of the lots from 1 to 33, inclusive, were his work; but the numbers of lots 34 and 42, inclusive, were not his work, and the ruled squares on the right and left margins of the plat were not filled out by him, but by some other person. The figures on the lots up to 33 are in black ink and small figures within a circle; those on the other lots are in red ink and in large figures, and not within a circle. The ruled squares on the right and left margins are filled out in a large hand entirely different from that of Bernhardt. The lots numbered by Bernhardt are renumbered in large figures in red ink.

Plaintiff's learned counsel contend that the plat which Bernhardt copied from was not the Fields' plat. And, in support of this, they argue that the Fields plat had a notarial paraph and seal, and this copy has none, and that on the Fields plat 42 lots were numbered and colored, and that only 33 lots were thus numbered and colored on the copy made by Bernhardt, and that the latter, if he had copied a part only of the Fields plat, would not have certified, as he did, that his copy was a true and correct copy; that his doing such a thing would have been contrary to the practice of engineers, and the learned counsel say that Bernhardt could not have appended his certificate while his copy was yet unfinished, because, by the settled practice of engineers, the certificate is the last thing written. And, further, that the purple coloring of this lot 42 is in ink; whereas, the coloring of the other lots is in water colors with powder.

In these arguments, the learned counsel are borne out in part by the testimony of Mr. Bernhardt, who says that he would not have certified to his copy being a true and correct copy if it had not been such in fact, and that the coloring of lot 42 is in ink; whereas, that of the other lots is in water colors with powder.

[1] We do not think there can be any doubt that the plat produced in court was copied from the A. G. Fields plat. Besides the testimonies of Moresi and Bernhardt and of the lady from whom the A. G. Fields plat was borrowed, already referred to, there is that of Mr. Robin, a notary public in the office of Mr. Moresi, who testifies to this copy having been made from the A. G. Fields original, and further testifies that the additions to the Bernhardt copy were made by him (the witness) by instruction from Mr. Moresi, in order to complete the copy and make it conform to the Fields original.

Strong corroboration of all this evidence is found in the fact that this lot 42, in combination with the 11 lots embodied in the donation to Adrian Dumartrait by Mrs. Wid. Grevemberg, gives the exact acreage called for by the said donation, and that by no other combination that can be suggested will this acreage be made out. Again, the certificate, as copied by Bernhardt, calls for 42 lots, and the learned counsel for the plaintiff offer no suggestion as to what other lot would be the lot 42 of the Fields plat, if the one in dispute were not it.

Mr. Moresi testifies that the coloring of the lots was done in his presence by Bernhardt, and included all the lots. He says that he can see no difference between the shading of lot 42 and that of the other lots, except that it seems to be lighter. In that statement, we must concur with him from our own examination of the plat. In fact, we would say that the darker purple border of lot 42 was identical with the like border of the other lots shaded purple.

The land in dispute is thus completely identified with the donation made by the

common author in title to Adrian Dumartrait, defendant's author in title.

[2] Moreover, defendant has title by prescription, since her possession has admittedly been of the character required for prescription, and has lasted more than 10 years, and has been under a title translative of property.

[3] Plaintiff's learned counsel do not admit that the description in the acts of sale by Adrian Dumartrait to defendant's husband, A. L. Monnot, and by the latter to defendant, embrace the land in dispute.

But there is no disputing the fact that, if, when referring to the north, south, east, and west, the parties had in mind the natural points of the compass as they were familiar with them, the description in the deed by Dumartrait to Monnot must include the land in dispute, in order not to be erroneous; for, if the land in dispute be left out, that part of the description reading "on the east by land of Murphy J. Foster" becomes entirely erroneous.

To get over this difficulty, the learned counsel suggest that possibly Dumartrait and Monnot, when they made this description, had before them the plat produced by defendant, whereon the lines which ought to run north to south are made to incline towards the west, so that the Foster land on the south would be in part the east boundary of the land of defendant, even though the land in dispute were left out.

This suggestion may be ingenious, but cannot be adopted, in the absence of any showing that the parties did make their description from this plat, and not from the natural points of the compass as they knew them. The showing, on the contrary, is that the land in dispute was then in cultivation up to the fence dividing it from plaintiff's land, and that Dumartrait actually delivered it to Monnot, and that the cultivation of it by Monnot and defendant continued uninterruptedly and quietly up to a time shortly before the institution of this suit, when plaintiff had a survey made of his land and discovered a shortage of some six acres, and also discovered that the deed from the heirs of Mrs. Wid. Grevemberg to Charles Grevemberg called for the entire S. W. ¼ of 32, and not merely for the S. ½ thereof.

[4] The learned counsel lay much stress on the fact that Monnot's deed to his wife calls for only 135 acres; whereas, if the 42.93 acres of the land in dispute be given to her, she will have 184.61 acres.

This Monnot deed to his wife was passed in New Orleans; and it is erroneous, not alone in the acreage, but also in the western boundary. The property intended to be transferred is, however, completely identified by the following addition to the description:

"Being the same property which was acquired by said A. L. Monnot from A. Dumartrait by act of sale passed before Jules P. Robin, notary public, on the ——— day of ———."

As to the effect of this additional description, see Lawler v. Bradford, 113 La. 415, 37 South. 12, and cases there cited.

[5] Besides, the property sold was a specific tract under fence, and described by boundaries; and hence was a sale per aversionem. And defendant turns the tables on plaintiff by suggesting that if plaintiff were to get the tract in dispute he would have some 36 acres more than his title calls for.

[6] It is said, however, that the present action is in boundary, and not petitory, and that the action in boundary is prescribed only by 30 years, and that the defendant's possession does not run that far back.

The learned counsel have done their utmost by ingenuity in pleading to give to the suit the appearance of an action in boundary; but the fact cannot be disguised that the matter involved is not the proper location of a boundary line, but is title vel non to the N. ½ of the S. W. ¼ of section 32. This question of title being settled, any competent engineer would locate the line without

any trouble to the perfect satisfaction of the parties. Defendant is in possession as owner of this N. ½ of S. W. ¼ of section 32, and plaintiff seeks to recover it by asserting title. This suit is manifestly petitory. No elaboration, surely, can be necessary in a matter so plain.

[7] Coming to the act executed by the heirs of Mrs. Wid. Grevemberg, including Adrian Dumartrait, to Charles Grevemberg —in form a sale, but in reality a mere confirmation of the oral donation made by Mrs. Wid. Grevemberg—we have no hesitation in saying that the description in said act by metes and bounds must be held to control that by reference to United States surveys. Where, in an act of sale, a discrepancy exists between the description according to United States surveys and that by metes and bounds, or by other designations, as to which the parties are less likely to have made a mistake than in their reference to the numbers and lines of the United States surveys, the description by metes and bounds controls. Dickson v. Dickson, 36 La. Ann. 871; Gughlielhmi v. Geismar, 46 La. Ann. 284, 14 South. 501; Bryan v. Wisner, 44 La. Ann. 832, 11 South. 290; Robinson v. Atkins, 105 La. 790, 30 South. 231; Thornhill v. Burthe, 29 La. Ann. 639; Randolph v. Sentilles, 110 La. 423, 34 South. 587.

The judgment appealed from is set aside, and the plaintiff's suit is dismissed, at his cost in both courts.