LECHE, J.
The pleadings in this case may be epitomized as follows: Plaintiff avers that it is the true and lawful owner of ■the following described property, situated in the parish of St. Tammany:
“A tract of land known as section forty (40) in township nine (9) south, range fifteen (15) east, Greensburg district of Louisiana, situated on the West branch of Pearl river, about eight miles above its junction with the Rigolets, containing 852 superficial arpents and having a front of twenty (20) arpents. on said Pearl river, and running back forty (40) arpents on parallel lines, all French measure, and comprising part of the lands confirmed to the heirs and legal representatives of Mrs. Magdalene Broutin, widow of Don de la Ronde, by act of Congress of August 23, 1856, less and excepting the following described lands conveyed to Robert J. Taylor, viz.: Beginning at the northeast corner of the northeast fractional quarter (%.) of the southeast fractional quarter (%) of section 28, township 9 south, range 15 east, running north 50 degrees east 19 chains to Pearl river; thence back to the place of beginning, and running along old line south 24 degrees east 21 chains; thence east 9 chains to southeast corner of S. E. % of section 28; thence south 20 chains to southeast corner of section 28; thence south 24 degrees east 24 chains and 52 links; thence north 50 degrees east 116 chains and 36 links to Pearl river; thence up the meanderings of Pearl river to where the first line joins said river, and containing about 350 acres more or less.”
Plaintiff further alleges that it acquired its title from Franklin Lunn and others April 12, 1902, by act before Warren, clerk of court for the parish of St. Tammany, and duly recorded in the conveyance office of that parish. It further alleges that before purchasing said lands it had the parish surveyor of St. Tammany, Mr. J. M. Yates, to locate, run out, and mark the limits and boundaries of said lands; that it secured a plat thereof; that it went into immediate possession of said property, and cut some of the timber situated thereon; that it has paid the taxes thereon up to the present time, and has remained in the actual, continuous, and undisputed possession of said land for more than 10 years; that if for any cause its said title is invalid, which it denies, it has title to said land by the prescription of 10 years, which prescription it specially pleads.
Plaintiff further alleges that about the month of January, 1913, the H. Weston Lumber Company unlawfully took possession of said property, without any title whatsoever and without right thereto, and refuses to deliver possession of said property to petitioner. Wherefore it prays to be recognized as owner of said property, and, as such, entitled to the possession thereof.
Defendant’s answer denies that plaintiff ever acquired title to or ownership of the tract of land described in its petition; that by the very terms of plaintiff’s title deed plaintiff only acquired from Franklin Lunn and others lots Nos. 1 and 2, described on the plat of survey of the de la Ronde grant, made by D. B. Morgan, surveyor, on February 16, 1827. It further avers that on June 24, 1911, defendant acquired at sheriff’s sale in the partition proceedings of Weston v. Rousseau et al. certain lots in section 40, township 9 south, range 15 east, known as the de la Ronde grant, designated and described as lots Nos. 2, 3, and 4, as per plat of survey thereof made by D. B. Morgan, surveyor, dated February 16, 1827, and deposited for safe-keeping in the office of Felix de Armas, notary public, in the city of New Orleans, said lots being sold in said sheriff’s sale also according to a plat of resurvey made by Howard Burns, parish surveyor, and filed in said partition proceedings; that the sheriff’s deed to respondent was duly recorded in the parish of St. Tammany on June 30, 1911. Respondent further alleges that it went into immediate possession as owner of said land, except as to lot No. 2; that it owns said land (with the exception of lot No. 2) under a recorded chain of titles extending back more than 50 years, at which time it was acquired by Antoine Rousseau. *189 It denies that plaintiff has any title either by prescription or otherwise to any of the land acquired as aforesaid by defendant.
Wherefore defendant prayed that plaintiff’s demand be rejected, and that it (the defendant) be recognized as the lawful owner of that portion of land in section 40, township 9 south, range 15 east, known as the de la Ronde grant, designated and described as lots Nos. 3 and 4 on a plat of survey of said de la Ronde grant made by D. B. Morgan, surveyor, dated February 16, 1827, and also according to the plat of resurvey made by Howard Bums, parish surveyor, filed in the clerk’s office of St. Tammany parish in the matter of Weston v. Rousseau, No. 1578 of the docket of said court, lot No. 2 of said survey, also purchased by said defendant, being conceded by said defendant to belong to Robert J. Taylor, said lots 3 and 4 containing 566.93 acres.
The district court rendered judgment as prayed for by plaintiff, and defendant appeals.
The description pleaded by plaintiff in its petition is not that by which it acquired the land in controversy, for its title from Franklin Lunn and others which it produced on a prayer for oyer describes the property as follows:
“The following described lands situated in the parish of St, Tammany, La., known as section 40 in township 9 south, range 15 east, Greens-burg district of Louisiana, situated on the west branch of Pearl river, about eight miles above its junction with the Rigolets, containing 852 superficial arpents and having a front of 20 arpents on said Pearl river, and running back 40 arpents on parallel lines, all French measure, being designated by the numbers 1 and 2 on a plan dated February 16, 1827, made by Gen. D. R. Morgan, surveyor, and deposited for reference in the office of Felix de Armas, then a notary in the city of New Orleans, and comprising part of the land confirmed to the heirs and legal representatives of Mrs. Magdalene Broutin, widow of Don de la Ronde,” etc.
It will be seen that the description pleaded in plaintiff’s petition entirely omits any reference to the plan made by Morgan in 1827, while the title from Lunn and others expressly describes the land sold to it by Lunn as being designated by the numbers 1 and 2 on that plan. According to the Morgan plat of survey, the whole Spanish grant to Don Pedro de la Ronde was subdivided crosswise into ten lots, separated by parallel lines running approximately southwest and northeast, and these lots were numbered consecutively from 1 to 10, beginning from the southeastern end or lower extremity of the grant to its northwestern or upper extremity. Lots 1 and 2, constituting the extreme lower or southern portion, contained 852 aipents, and the whole grant was composed of 4,182 arpents.
The annexed sketch, though not pretended to be made to scale, illustrates the approximate position and division of the de la Ronde Spanish grant as represented in the Morgan plat.

*191 In 1856 Congress confirmed the claim of the heirs of de la Ronde to a tract of land in the Greensburg district, parish of St. Tammany, fronting on the west branch of Pearl river about 10 miles from its fall into the Rigolets, containing 2,000 superficial arpents, as represented on the plat of survey made by Carlos Trudeau and annexed to the title deed granted by Don Morales, superintendent of the province of West Florida, to Mrs. Magdalene Broutin, widow of de la Ronde, ‘■‘provided, however, that this act shall only operate as a relinquishment forever on the part of the United States, to the said lands and shall not interfere with adverse valid rights of other persons, if such exist, to any part of the land embraced in the claim and survey aforesaid.” According to the surveys made by the United States government, the de la Ronde grant appears to have been limited to section 40, township 0 south, range 15 east, or to the lots on the Morgan plat represented by the numbers 1 to 5, inclusive. Mr. Howard Burns, who made an ex parte survey for the defendants, in August, 1913, fixes the line which separates lot 5 from lot 6 on the Morgan map, as approximately coinciding with the line which on the official government map separates section 40 from section 39. It is admitted that there are no landmarks or monuments by which the lines represented on the Morgan map could •with any degree of accuracy be re-established, and that by the terms of the act of Congress the de la Ronde grant was greatly reduced in area. But it is evident from the area of the grant as mentioned in the act of Congress and as delineated on the official government map that section 40 is approximately composed of the lots 1, 2, 3, 4, and 5 of the Morgan map. Morgan gives the area of these lots as amounting to 2,152 arpents. The act of Congress says that the claim is for 2,000 arpents, and the official map represents section 40 as containing 1,-499 acres. It is also evident that when the heirs of de la Ronde, or their vendees, sold by descriptions referring to the Morgan plat of survey, they intended to sell these lots as they are relatively located on that plan; that they could not have intended to sell, nor could the purchasers have intended to buy, the northern part of the grant when the act of sale describes the land conveyed as lots 1 and 2, which constitute the southern part of the grant, as designated on the Morgan map. Yet, if the title claimed by the plaintiff to the northern part of section 40 is recognized as delineated in the Yates survey, that is precisely what our judgment would accomplish. It would recognize the plaintiff as lawful owner of the northern part, although it only acquired from Lunn and others the extreme southern part of the grant, both in position and area, as described in the Morgan plat.
It is- true that the act of sale from Franklin Lunn and others to plaintiff states that the land sold is known as section 40, but, proceeding further, it mentions the area to be 852 arpents, and then more specifically describes it as a tract having a front of 20 arpents on Pearl river and running back 40 arpents on parallel lines, being designated as lots 1 and 2 on the Morgan plat. This specific description by area, by frontage on Pearl river, and by reference to the Morgan plat, controls the prior general description. See Ganucheau v. Monnot, 130 La. 463, 58 South. 150.
An ex parte survey made by X M. Yates, parish surveyor for St. Tammany parish, on October 20 and 21, 1903, at the request of the plaintiff, shows the land which plaintiff claims to have purchased from Franklin Lunn and others to be that adjoining section 39 and as forming the extreme northern portion of the de la Ronde grant. Plaintiff claims that it has had the open and undisputed possession of the land as shown on the *193 Yates plat for more than 10 years, but, even if that be conceded, that is not the land which its title covers. The land covered by plaintiff’s title constitutes the southern extremity of the de la Ronde grant, and of that plaintiff does not pretend to have had open and undisputed possession. We held in the case of Albert Hanson Lumber Co., Limited, v. Angelloz et al., 118 La. 862, 43 South. 529, that a deed describing a different tract of land from the one in controversy is not translative of the land in controversy, and therefore cannot serve as a basis for prescription, and the same doctrine was applied in the case of Castera’s Heirs v. New Orleans Land Co., 125 La. 877, 51 South. 1021. Applying that rule to the present case, plaintiff could not have acquired the land in dispute by the 10-year prescription.
We are therefore of the opinion that plaintiff has failed to establish title to the land in controversy, surveyed by J. M. Yates, on October 20 and 21, 1903, as represented on the plat made by Yates, and which is claimed by it to be that described in its petition.
Defendant, on the other hand, asks to be recognized as the lawful owner of lots 3 and 4 of the de la Ronde grant as resurveyed and delineated on a plan of survey made by Hr. Howard Burns, parish surveyor of St. Tammany. That would amount to a recognition of the correctness of the survey made by Burns, and the evidence of Bums himself does not justify such a decree.
The parties to this litigation have produced titles which purport on their face to show that plaintiff owns lots 1 and 2 of the Don Redro de la Ronde grant, and that defendant owns lots 3 and 4 of the same grant, as designated on the Morgan plat of survey made in 1S27. They disagree as to the location of these lots. They concede that there are neither landmarks nor monuments by which the lines of the Morgan survey can be accurately re-established. It would then be folly for this court to attempt to do that which the parties themselves concede to be not feasible.
For these reasons, the judgment appealed from is avoided and reversed, the demands of plaintiff and defendant are rejected, and plaintiff’s suit dismissed, with costs.
O’NIELL, J., concurring, is of the opinion that the plaintiff’s suit should be dismissed, for the reason that Thomas Lunn, having bought only lots 1 and 2 (containing 852 arpents) in section 40, assumed that those lots embraced all of the section (containing 1,-499.83 arpents), and sold to Robert J. Taylor 350 acres in section 40 which he had not bought, above lots 1 and 2, and thereafter sold to the plaintiff the remainder of what he had bought, assuming, erroneously, that the remainder embraced all of section 40 except the tract sold erroneously to Taylor.