### DAWIDOFF v. ROXANA PETROLEUM CORPORATION.

(District Court, W. D. Louisiana. October 10, 1924.)

No. 192.

1. **Adverse possession ⟨⟩80(1)—Prescription not supported by deed with wrong description.**

Plea of prescription of 10 years is not supported by a sheriff's deed, which on its face conveys land in a township other than that in which is the land in question.

2. **Vendor and purchaser ⟨⟩130(2)—Purchaser not required to take doubtful title.**

Specific performance will not be decreed against purchaser, where there is a misdescription in sheriff's deed in vendor's chain of title, which constitutes a serious basis of attack on the title, even though eventually it might not be held sufficient for recovery from proposed purchaser.

In Equity. Suit by Joseph Dawidoff, trustee, against the Roxana Petroleum Corporation. Decree for defendant.

Goff & Barnette, of Arcadia, La., for plaintiff.

Alex F. Smith, of Shreveport, La., for defendant.

DAWKINS, District Judge. This suit was filed in the state court for the Third district, parish of Bienville, La., to compel defendant to take title to a certain oil and gas lease covering the west half of southeast quarter of section 21, township 18 north, range 5 west, and to recover the price of $4,000 stipulated to be paid. In the alternative, plaintiff prayed for damages in the same amount, based upon the contention that defendant willfully delayed passing upon the title to the property during a period of time when the said lease could have been sold for said sum, and until certain explorations for oil in that locality had failed, which rendered the property valueless for mineral purposes.

The case was removed to this court by defendant because of diverse citizenship, and has been tried and submitted upon a stipulation to be decided in chambers.

## Opinion.

The instrument sued upon provides as follows:

"Joseph Dawidoff, Trustee, to Roxana Petroleum Corporation. Escrow Agreement. Reg. No. 30115. Filed for record July 15, 1922, at 3:35 p. m. E. H. Murphy, Dy. Clerk Dist. Court.

"State of Louisiana, Parish of Bienville.

"This agreement, made by and between Joseph Dawidoff, trustee, whose wife is Bertie Brooks, party of the first part (whether one or more), and Roxana Petroleum Corporation, party of the second part, witnesseth:

"The attached assignment, oil, gas, and mineral lease, or [and] assignment thereof, covering the following described land situated in Bienville parish, only in so far as said lease or [and] assignment covers and applies to the following described land: W. ½ of S. E. ¼, Sec. 21, Tp. 18 N., R. 5 W., together with the sum of four thousand ($4,000.00) dollars, is hereby placed in escrow in First Trust & Banking Co. Bank of Arcadia, La., upon the following conditions, to wit:

"Party of the first part shall furnish and deliver abstract of title to the land described in said oil and gas lease, or [and] assignment, within two days from date hereof, showing good and merchantable title to said lease to be vested in the party of first part; and party of second part shall have said abstract examined and title to said lease passed upon by competent attorney within five days from date said abstract is so delivered to the party of the second part. If said title is good and merchantable, then said bank shall pay said sum to party of first part, and shall deliver said lease or [and] assignment thereof to party of second part immediately. The opinion of said attorney shall be in writing, and if he shall hold that said title is defective, then all defects shall be clearly indicated and set forth by him in writing. If said title is defective, then party of first part shall have five days from the date said attorney's opinion is delivered to him within which to cure said defects, at expense of party of second part, and if he should fail to cure said defects, then said lease or [and] assignment thereof shall be delivered by said bank to party of the first part, and said sum of money shall be delivered and paid over by said bank to party of second part immediately.

"In witness whereof we have hereunto set our hands at Arcadia, La., this 13th day of July, 1922.

"Joseph Dawidoff, Trustee,
"Party of the First Part.
"Roxana Petroleum Corp.,
"Party of Second Part.
"Attest:
"W. D. Goff
"Fred W. Penticost.

"We accept the deposit in escrow as set out in the foregoing and agree to be governed thereby. By G. L. Shields. First Trust & Banking Co., by Carl Goff, Cashier, Escrow Agent.

On June 20, 1922, prior thereto, an identical agreement (except that it covered only one of the 40 acres of land) had been executed, and abstracts submitted within the stipulated delays, and on the 24th of the same month counsel for defendant rendered an opinion as to the title, pointing out certain defects therein, and suggesting how they might be cured.

After the execution of the second escrow agreement, quoted above, on July 13, 1922 (which covered, in addition to the tract described in that of June 20th, an adjoining 40 supported by the same chain of title), the same abstract was submitted, and various persons, including plaintiff, made efforts to cure the alleged defects pointed out by defendant's counsel. Finally, on August 11th, the said attorney, notwithstanding the data which had been supplied, advised his client that the title was invalid unless and until certain other requirements made in his first opinion were complied with. Whereupon, on August 17th, defendant wrote the First Trust & Banking Company, depositary of the escrow agreement, transmitting the abstract and other papers, and requesting the return of its deposit of $4,000.

Plaintiff attempts to restrict the issues within the limits of the second agreement, and to exclude the prior and contemporaneous circumstances and considerations, contending that defendant fraudulently delayed announcing its conclusions until the property had become worthless. However, I am of the opinion that the agreement of June 20, 1922, is part of a continuous transaction or undertaking, and that equity requires a consideration of the whole in or-

der to reach a just determination of the case.

It rather clearly appears that neither side paid any particular attention to the very short and definite periods fixed for acting by the agreement, but that all concerned were anxious to perfect the title and to consummate the conveyance, if possible. The whole original and moving spirit in the whole matter was a party by the name of George L. Shields, whose relations to the several interests, while not altogether clear, seem to have been as a lease broker, or person engaged in locating desirable tracts of land in localities where explorations for oil were being made, obtaining options thereon, and selling the same for a profit. Most of his sales, so far as this record discloses, were made to defendant. In this particular instance, he obtained from plaintiff, who held for himself and others, as trustee, an assignment of the lease in question on the basis of $50 per acre, with the understanding had with one of the parties to the trust, Penticost, that, if closed, he would receive $4 of the stipulated price of $50, leaving plaintiffs a net return of $46 per acre. This assignment was attached to the above escrow agreement, signed by plaintiff as trustee, for the defendant by Shields, and deposited in the defendant bank. The next day one of defendant's duly authorized agents appeared and gave a draft upon his principal for $2,000, which, together with another for the same amount previously given under similar circumstances, was deposited in the bank, paid by defendant, and the action of Shields in that regard fully ratified.

From the best that can be determined by the record, Shields had possession of the abstract at the time of the second agreement, and promptly thereafter took up with W. D. Goff, Esq., one of the present attorneys for plaintiff, and who owns an interest in the abstract books at Arcadia, the matter of curing the defects and meeting the exceptions pointed out by defendant's counsel in his letter of June 24th. While this abstract was furnished for the original 40 alone, as a matter of fact it covered the entire tract through the one chain of title. Subsequently thereto, Shields and others secured a number of affidavits, attempted to obtain certain quitclaim deeds called for by the first opinion, but failed to do so, and the abstract eventually turned up in the hands of defendant's counsel, who made his second report on August 11, 1922, after one of the wells, which had created consid-erable excitement, had developed salt water about the 6th or 8th of the same month. However, I am convinced that the record does not sustain the charge of fraud and bad faith on the part of defendant, for a short while afterwards it bought a lease on another piece of land in the same section, paying therefor $30, instead of $50, per acre, to take the place of plaintiff's land. If it had been convinced that the locality was worthless as possible oil land, it would scarcely have paid three-fifths of the price promised plaintiff therefor and taken the chance of being held for the latter also. Altogether, there were five or six wells drilled in that locality, and the one just referred to was among the first completed.

The case must turn, in my opinion, upon the question of whether or not the objections urged by defendant's counsel to the title were sufficiently serious to be suggestive of litigation; if so, then it was not bound to take the lease, even though ultimately it might have been successful in defending the same.

I shall not go into all the points raised, for the reason that I think one of them has sufficient merit to be determinative of the case. I have reference to the transfer from J. J. Lofton to L. S. Cathey, which was a judicial sale against an absentee. Suit was brought via ordinari against J. J. Loflin by attachment; a curator was appointed, who acknowledged service, and citation and notice of seizure were posted on the courthouse door. Subsequently an amended petition was filed, alleging the name of defendant to be J. J. Loftin (spelled in other places Lofton), which does not appear to have been posted, or any other service made, except an acceptance of service by the curator. There was judgment against "J. J. Loftin (J. J. Loflin or Lofton)" for plaintiff for the amount of the matured note, and ordering the property sold for part cash and on terms of credit for the balance. Seizure was made, with proper description in the judgment, writ, advertisement, proces verbal, and all other proceedings, except that in the sheriff's deed the property was described as being in range 8, instead of range 5, where it was actually located.

For these reasons defendant's counsel required that quitclaim deeds be obtained from the heirs of J. J. Loflin, Loftin, or Lofton, as the case may be. He also contended that there were other defects arising from the insufficiency and irregularity of certain proceedings by which a former own-

er, G. G. Anders or Green G. Andrews, attempted to sell the interest of his minor children. But as to all of these objections plaintiff takes the position that the rights of all persons who might attack the title are barred by prescription of 10 years acquirendi causa, under the Louisiana Civil Code. On the other hand, defendant's counsel asserts that the said transfer from Loflin or Lofton to Cathey was not translative of property, or such as would support prescription, because it did not describe or convey the land in question, but covered property some three miles further west. It was suggested that a mandamus proceeding might be filed against the sheriff, to have the deed corrected, but this does not appear to have been done. It also appears that the heirs of Anders, or Andrews, would not give quitclaim deeds, but asserted they expected to claim their interest in the property, and would probably file suit.

[1, 2] The question to be decided, therefore, is: Would the transfer mentioned support a plea of prescription of 10 years? I think not. It certainly does not on its face convey the property, but covers land in an entirely different township some three miles away. It is true that as between the parties to the proceedings in Cathey v. Lofton, Loflin, or Loftin, the deed might be corrected, inasmuch as it would seem that the description therein was an error; but in order to support prescription the act must on its face describe and be translative of the particular property in question. Third persons, relying upon prescription, if they have acquired in good faith, have only to look to the act itself, and are not required to refer to other documents or proceedings to support their claims. And the reverse of this proposition would appear to be true; that is, if the deed itself does not describe the property, it cannot be relied on to sustain prescription. Albert Hanson Lbr. Co. v. Angelloz, 118 La. 861, 43 So. 529; Salmen Brick & Lbr. Co. v. Weston Lumber Co., 144 La. 186, 80 So. 249; Bendernagel v. Faret, 145 La. 115, 81 So. 869. In any event, the defect carries with it a serious basis of attack upon the title, and in such circumstances defendant is not compelled to take it, even though eventually it might not be held sufficient to recover from the proposed purchaser. Beer v. Leonard, 40 La. Ann. 847, 5 So. 257.

The defendant bank in this case is only a nominal party or stakeholder, and is ready to pay the money over to whoever may be entitled to it.

For the reasons assigned, the demands of plaintiff are rejected, and it is ordered and decreed that the defendant bank do now remit and turn over to the defendant Roxana Petroleum Corporation the $4,000 deposited with it under the escrow agreement; that the said agreement be canceled and annulled, and the lease, together with all other papers, abstracts, etc., be returned to plaintiff.