O’NIELL, J.
Plaintiff appeals from a judgment rejecting the corporation’s demand, in a petitory action, for a tract of land containing 30.63 acres, and designated as fractional section 30, township 12 south, range 11 east.
Plaintiff claims title by purchase, on the 1st of May, 1907, from' Dr. Andrew W. Smythe, who held a patent for the land from the state, dated the 27th of April, 1874.
Defendant, answering the suit, denied the validity of the state patent that had issued to Dr. Andrew W. Smythe, and set up title in himself, through mesne conveyances, from one Jean Baptiste Castillon, who claimed title under a French or Spanish grant, approved by Act of Congress of March 3, 1807 (2 Stat. 440). Defendant also pleaded the prescription of 10 and 30 years.
The land conveyed in the deed under which the defendant claims title is described as consisting of two tracts, one containing 99.04 acres, lying almost entirely on the west side of the line between ranges 10 and 11 east, and the other tract containing 30.63 acres, entirely on the east side of the line between ranges 10 and 11 east. The latter tract is said tó be triangular in shape, but is in reality quadrangular. Its eastern or southeastern- boundary line measures 17.70 chains; its northern or northeastern boundary line measures 35.90 chains; and its southwestern boundary line measures 35.63 chains. But the northern or northeastern and southwestern lines, before coming to a common point or forming an apex at their western extremities, intersect the eastern boundary of the tract first described, containing 99.04 acres, generally referred to as the front tract. The western boundary of the so-called triangular tract, adjoining the eastern boundary of the so-called front tract, is only 18 feet in length, *259 measured north and south. In reality, therefore, defendant’s deeds call for one tract of land containing 129.67 acres, the width of which tract, at the place where it is regarded as being divided into two tracts, is only 18 feet.
It is not seriously disputed, if disputed at all, that defendant and his authors in title have had actual possession of the so-called front tract long enough to maintain the plea of prescription of 10 years if that were the land in contest. A large part of the land was 'under fence and in cultivation, and was occupied by a store and other buildings, by defendant’s authors in title. It also appears that they paid taxes on the entire tract of land.
The land in contest, however, is the so-called triangular tract, or eastern tract, containing 30.63 acres as described in the deed by which defendant bought the entire 129.67 acres; and the question involved, with regard to the prescription of 10 years, is whether the description in the deeds by which defendant’s vendor acquired title sufficiently identifies that tract.
According to the United States surveys, the land in contest was not a part of the Jean Baptiste Castillon grant, but adjoined the Castillon grant on its rear or northeastern boundary. In passing upon the plea of prescription of 10 years, however, that is a matter of no importance; for defendant contends that the land in contest is described in the deeds of his authors in title as far back as 1849.
On the 9th of April, 1849, the sheriff seized, as the property of F. Y. Labarre and others and sold to Antoine L. Labarre and Theodule Bienvienue, a tract of land described as:
“A certain tract of ground, situated in the parish of Jefferson, a little above the town of Carrollton, being a part of the plantation formerly belonging to the late Pierre Yolant La-barre, and being at a distance of eleven arpents from the River Mississippi; said ground is composed of all the land between and including lot number twenty-eight and the Bayou De La Metairie, designated by the numbers twenty-eight, twenty-nine, thirty, thirty-one, thirty-two, thirty-three, thirty-four, thirty-five, and a part of lots numbers thirty-six, thirty-seven and thirty-eight.”
At that time, the triangular tract was not known as section 30 on any government survey. In 1854, however, Maurice Hauke, deputy United States surveyor made an official survey and plat of all the land lying between lot 28 and the Bayou De La Metairie, being the land described in the sheriff’s deed last mentioned. The survey showed that the land contained 129.67 acres; the so-called front tract, or western tract, having 99.04 acres, and the eastern tract or so-called triangular tract having an area of 30.63 acres.
On the 12th of November, 1851, Antoine L. Labarre sold his half interest in the land' to his co-owner, Theodule Bienvienue, describing it as it was described in the sheriff’s sale to Labarre and Bienvienue.
Bienvienue sold the land to Gustave Nedit, on the 2d of February, 1S65, describing it precisely the same as in the two preceding deeds but adding to the description this:
“Which tract or lot of land contains one hundred and twenty-nine /ioo superficial arpents, as per plan of survey annexed to an act passed before P. C. Larasche, notary public, 6th March, 1849. Being the same property purchased by the vendor jointly with A. L. La-barre at a sale made by D. S. Dewees, sheriff of this parish, * * * as per deed of said sheriff, 9th April, 1849, duly recorded in the office of conveyances of said parish of Jefferson, in B. 16, folio 431. And by an act executed before A. Chiapella, notary public, on the 12th of March, 1851, the said A. L. Labarre conveyed his undivided half interest in and to said property to the present vendor.”
On the 18th of November, 1865, Mrs. Gustave Nedit sold to James Brischo and Edward Caldwell two-thirds interest in the *261 land, under the same description by which Gustave Nedit had acquired it.
On the 15th of August, 1866, Gustave Nedit sold to James Briseho and Edward Caldwell the remaining third interest in the land, under the same description by which Mrs. Nedit had sold the two-thirds interest to Briseho and Caldwell.
On the 16th of September, 1868, the land, having been seized as the property of James Briseho and Edward Caldwell, was sold by the sheriff to Thommy Lafon, under a description identically the same as in the preceding deeds except that the area was stated both in acres- and in arpents, thus:
“Which tract or lot of ground contains one hundred and twenty-nine /ioo superficial acres, or one hundred and fifty-three /ioo arpents, as per plan of survey annexed to an act before P. E. Laresehe, on 6th March, 1857.”
The plan of survey said to have been annexed to an act before P. E. Laresehe on the 6th of March, 1857, was destroyed, as is shown by a certificate of the custodian of notarial records.
On the 19th of October, 1869, Thommy Lafon sold the land to Mrs. Sophy Bouligny Fazende under ■ precisely the same description by which Lafon had acquired title.
On the 27th of January, 1874, Mrs. Sophy Bouligny Fazende sold the land, under the same description, to Louis Breton, declaring in the deed that the vendor had acquired the property from Thommy Lafon on the 19th of October, 1869.
The land was described in the inventory of the succession of Louis Breton almost exactly as it had been described in the deeds mentioned above, except that the area was stated as “one hundred twenty-nine and /ioo superficial arpents or acres, be the same more or less.” In the petition of the testamentary executor for an order of sale of the property of the succession of Louis Breton, the land was described precisely-as in-the inventory of the property of the succession.
The land was sold by the testamentary executor to Leopold Yerdella, on the 30th of July, 1877, under substantially the same description by which Louis Breton had acquired it, except that the area was given as 109.67 arpents, instead of 129.67 acres; but the land was declared to be the same property which Louis Breton had acquired by purchase from Mrs. Sophy Fazende on the 27th of January, 1874.
On the 21st of January, 1886, Leopold Verdella’s wife, acting as his agent by virtue of a power of attorney, sold the land to Frederick Marie, Jr., describing it the same as in the deed by which Verdella had acquired title, and as containing 109.67 superficial arpents.
On the 19th of April, 1886, Frederick Marie, Jr., sold the land to Mrs. Anna Eliza Babin, under the same description by which Marie had bought, and giving the area as 109.67 superficial arpents, but declaring that the property was the same that the vendor had acquired from Leopold Verdella, and the same that Yerdella had acquired from the estate of Louis Breton on the 30th of July, 1877.
’ On the 1st of July, 1891, Mrs. Anna Eliza Babin sold the land to Henry Lochte, under the same description by which Mrs. Babin had bought, giving the area as 109.67 superficial arpents, and declaring that the property was the same that Mrs. Babin had bought from Frederick Marie, Jr., on the 19th of April, 1886.
On the 16th of October, 1899, Henry Lochte sold the land to Mrs. Alice Doswell Bein, under the same description by which Lochte had bought, but stating the area to be:
“One hundred and twenty-nine 6r/100 superficial arpents, all as will be shown by a plat or survey of said property to be hereto attached; *263 being the same property acquired by this vendor from Mrs. Anna Eliza Miller, wife of Auguste Babin, * * * on July 11, 1891, registered in conveyance office of Jefferson parish. in Book T, folio 434.”
It does not appear that a plat or survey of the property was ever attached to the deed from Lochte to Mrs. Bein. The deed had been on record more than 10 years when this suit was filed.
On the 20th of September, 1902, only eight years before this suit was filed, Mrs. Alice Doswell Bein sold' the property, to the defendant herein, describing it as follows:
“A certain tract of land, together with all the improvements thereon, and all the rights, ways, servitudes and appurtenances thereunto belonging or in any wise appertaining, situated in the parish of Jefferson, this state, being part of the Labarre Plantation, fronting on Labarre Road and Bayou Metairie, composed of lots numbers twenty-eight to thirty-five inclusive, and'parts of lots thirty-six, thirty-seven and thirty-eight, on the annexed plan of Henry L. Zander, parish surveyor, dated August 20, 1902, being a copy of his plan dated. November, 1899, and on file in the district court of Jefferson parish, in case of Bonnabel v. N. O. & W. R. R. Co.; the whole comprising one hundred and twenty-nine 07/ioo acres, and is formed of two portions of ground, one being ninety-nine Vioo acres and fronting on the Labarre Road and Bayou Metairie, and the other, of a triangular shape in the rear and having thirty «Vioo acres.”
The plan made by Henry L. Zander, parish surveyor, in November, 1899, a copy of which, dated August 20, 1902, was annexed to the sale by Mrs. Bein to the defendant, Taylor, is supposed to be the plat or map of the survey which it was said would be attached to the deed from Henry Lochte to Mrs. Bein.
The map is also said to be a reproduction of the plan made by Maurice Hauke, deputy United States surveyor, in February, 1854; the Maurice Hauke survey is supposed to be — and we have no doubt that it is — the one referred to in the several deeds in the defendant’s chain of title, subsequent to 1854.
The surveyors who testified in this case admitted, of course, that the mere reading of the descriptions in the title deeds preceding the one from Mrs. Bein to the defendant, without looking at the government survey, and without comparing one deed with another in th^ chain of title, would not show where the land conveyed was located, or whether it did or did not include the so-called triangular tract now in contest. But the surveyors testified, and demonstrated beyond all doubt, that a reference to the public records and_ surveys of the land disclosed that the triangular shaped tract containing 30.63 acres, now in contest, was included in every conveyance in defendant’s chain of title since 1854.
[1, 2] The law doqs not require that a deed, to support the prescription of 10 years, shall contain such a description that the land can be identified without'reference to other records. Article 3479 of the Civil Code requires merely “a title which shall be legal, and sufficient to transfer the property.” Article 3483 declares that, to support the prescription of 10 years, “a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title.” Article 3484 declares that the term “just title” does not mean a title from the owner, but a title from any person whom the purchaser honestly believed to be the true owner, “provided the title be such as to transfer the ownership of the property.” Article 3485 defines the phrase “transfer the ownership of the property” as meaning, “not such a title as shall have really transferred the ownership of the property, but a title which, by its nature, would have been sufficient to transfer the ownership of the property, provided it had been derived from the real owner.” And article 3486 declares that, to support the plea of prescription of 10 years, the title must be certain; that is, it must fix exactly the origin or basis of the posses *265 sion. Article 3437 declares that it is sufficient for a person Wishing to take possession of an estate to enter upon and occupy a part of the land, provided it be with the intention of possessing all that is included within the boundaries. The word “boundaries,” in that article, means the. limits or marks of inclosures if the possession be without title, ■or the boundaries or limits stated in the title deed if the possession be under a title. That is made plain by article 3498, which declares that—
“When a person has a title and possession conformably to it, he is presumed to possess according to the title and to the full extent of its limits.”
There is a further explanation in article 3503, declaring that, with regard to the prescription of 30 years, which is acquired without title, the possession extends only to that which is actually possessed by the person pleading the prescription.
[3] It is well settled, however, that article 3503 has no application to the prescription of 10 years; as to which a person who possesses a part of a tract of land, under a title for the whole tract, is presumed to possess the entire tract as defined in his title deed. See Henderson v. St. Charles Church, 7 Mart. (N. S.) 117; cited with approval in Chamberlain v. Abadie, 48 La. Ann. 589, 19 South. 574; in George v. Cole, 109 La. 833, 33 South. 784; in Railsback v. Leonard, 118 La. 925, 43 South. 551; and in Leonard v. Garrett, 128 La. 543, 54 South. 987. See, also, Green Bros. v. Witherspoon, 37 La. Ann. 751; and Bernstine v. Leeper, 118 La. 1098, 43 South. 889.
[4] It must be borne in mind that the plaintiff in this case does not claim title from any of the defendant’s authors. No right has arisen in favor of any third party that would prevent the defendant from correcting, if necessary, the errors in the deeds preceding that of his immediate vendor, with regard to the area of the land conveyed. Those errors were very slight, consisting mainly in stating the unit of measure as “arpents” instead of “acres.” One of the surveyors who testified in this case explained that the word “arpents” has often been used by French speaking people, in describing property, as being equivalent to acres. The fact that, in some of the deeds, the number of acres or arpents was written 109.67, instead of 129.67, is a matter of no consequence, especially as the land described in those deeds was identified by an express reference to the deed by which the vendor had acquired title. As authority for the doctrine that, when such errors in the description in a deed are explained, the deed will support the prescription of 10 years in defense of the title intended to be conveyed by the deed, see Frantom v. Nelson, 142 La. 850, 77 South. 767. Neither of the two decisions relied upon by plaintiff’s counsel is in conflict with Frantom v. Nelson, viz.: Albert Hanson Lumber Co. v. Angelloz, 118 La. 862, 43 South. 529; and Salmen Brick & Lumber Co. v. H. Weston Lumber Co., 144 La. 186, 80 South. 249. In each of the cases cited, the defendant undertook to sustain the plea of prescription of 10 years by a title describing a tract of land entirely different from the tract which he had possessed.
[5] Nor do we find the decision in Gulf Refining Co. v. Jeems Bayou Hunting & Fishihg Club, 129 La. 1021, 57 South. 322, cited by plaintiff’s counsel, in conflict with the doctrine that possession of a part of a tra.ct of land, by one one who holds a title deed for the whole tract, is possession of the whole tract. In the case cited, the purchaser of two tracts of land, widely separated, in separate townships and ranges, undertook to sustain the prescription of 10 years as to both tracts by possession of only one tract. The court, without deciding the question, expressed some doubt whether article 3437 *267 of the Civil Code should apply to such a case, hut distinguished the case from that of Bernstine v. Leeper, where the two tracts purchased were contiguous. In the case before us, the two tracts of land acquired by the same deed, if they should he regarded as two tracts, one containing 99.04 acres and the other containing 30.63 acres, are contiguous and form in reality one tract. It is true the line of contiguity is not long, only 18 feet'; but that does not affect the principle stated in Bernstine v. Leeper.
[6, 7] It is said in appellant’s brief that the front part of defendant’s land, the part which has been actually occupied by him and his vendors, is separated from the rear part “by a tract of land 100 feet wide, owned by the New Orleans & Western R. R.” The record shows, however, that what the New Orleans & Western Railroad Company bought from Henry Lochte, in October, 1895, was not “a tract of land 100 feet wide,” but “the right of way 100 feet wide, for railroad purposes.” A sale of a railroad right of way conveys or establishes only a servitude upon the land. Coguenheim v. Trosclair, 137 La. 985, 69 South. 800; La. Sulphur Mining Co. v. Brimstone Railroad & Canal Co., 143 La. 743, 79 South. 324. With regard to ownership and possession, the railroad right of way across the land, being only a servitude, did not divide the property into two tracts. Sallier v. Bartley, 113 La. 400, 37 South. 6.
We are not informed by the record whether the district judge founded his decision upon an opinion that the defendant had a better title than that of the plaintiff, or upon prescription, either of 10 or 30 years. Our conclusion is that the plea of prescription of 10 years should have been and must be sustained, and we presume that was the basis of the judgment appealed from.
The judgment appealed from is affirmed, at appellant’s cost.