188 So. 700

**CONTINENTAL LAND & FUR CO., Inc.,
v. LACOSTE.**

No. 35165.

April 3, 1939.

Rehearing Denied May 1, 1939.

Ellender & Wright, of Houma, and Miller, Bloch & Martin, of New Orleans, for appellant.

L. A. Goudeau, of Grand Coteau, and Henican, Carriere & Cleveland and C. Ellis Henican, all of New Orleans, for appellee.

O'NIELL, Chief Justice.

This is a petitory action. The property in contest is a shell mound, having an area of about 10 acres, located on the east bank of the Atchafalaya River, in the Parish of Terrebonne. The defendant claims title by virtue of two patents from the State, issued to his grandparents. He pleaded, in the alternative, the prescription of ten years and of thirty years. The judge of the district court sustained the plea of prescription of thirty years and rejected the plaintiff's demand. The plaintiff is appealing from the decision.

The tract of land described in the two patents on which the defendant relies has an area of 162.07 acres, and is the equivalent of a quarter of a section, bordering on the east side of the Atchafalaya River, and described as the fractional SE¼ of NE¼ and fractional NE¼ of SE¼ of Section 19, containing 82 acres, and the SW¼ of NW¼ and NW¼ of SW¼ of

Section 20, containing 80.07 acres, in T. 18 S., R. 12 E. The patent for the 82 acres in Section 19, bordering on the river, was issued to the defendant's grandmother, Mrs. Margeret De Hart, wife of Jesse De Hart, on the 28th of August, 1869. The patent for the adjacent 80.07 acres, in Section 20, was issued to the defendant's grandfather, Jesse De Hart, on the 11th of March, 1879, under a homestead entry, made according to the provisions of Act No. 21 of 1871. It is recited in the patent that the proof of settlement and cultivation was made under a certificate dated March 25, 1872, located upon the SW¼ of NW¼ and NW¼ of SW¼ of Section 20, in T. 18 S., R. 12 E., containing 80.07 acres, "according to the official plat of the survey of the said lands in the State Land Office." By the terms of Act No. 21 of 1871, the Register of the State Land Office was forbidden to issue a patent before the expiration of five years from and after the original entry and the accompanying affidavit, and then only upon proof that the entryman had resided upon or cultivated the land for the term of five years immediately succeeding the date of the filing of the affidavit. That means that Jesse De Hart was residing upon or cultivating land which was supposed to be described in his patent, from March 25, 1872, to March 11, 1879. The evidence in this case, however, shows that the only cultivable land in that neighborhood, or within a radius of many miles around, was the shell mound, or elevation, in contest in this suit; and the evidence shows that that is the land that Jesse De Hart was residing upon and cultivating at that time.

The expression, "according to the official plat of the survey of the said lands in the State Land Office", appears also on the patent that was issued to Mrs. Jesse De Hart, for the adjacent 82 acres, in fractional Section 19, bordering on the river; and the expression seems to refer particularly, if not only, to the area of the land conveyed. The defendant attaches great importance to these references to the official plat of survey in the State Land Office, because the only official plat of survey in the State Land Office at that time showed that the shell mound, or elevation, which is now in contest, was located entirely within the 162.07 acres described in the two patents that were issued to the De Harts. The official plat of survey, in that respect, was wrong, because the section lines in that township were only partially surveyed in the field; and the location of the shell mound, or elevation, now in contest, was shown on the plat about half a mile north from its actual location on the ground. On the plat the mound is located on the extreme north end of Deer Island, on the west side thereof, bordering on the Atchafalaya River. The actual location of the mound, as shown by a survey made after this suit was filed, is about midway between the north end and the south end of Deer Island, on the west side thereof, bordering on the Atchafalaya River. Deer Island is about three-quarters of a mile long, measured along the east bank of the Atchafalaya River. The island has a maximum width of about a third of its length, and an area of about 100 acres, or less. It is bounded on the southeast side

by Deer Island Bayou, for the distance of about halfway around the east side of the island, and is bounded on the northeast side by a smaller bayou, which is a continuation of Deer Island Bayou, and which extends from the north end of Deer Island Bayou, around the northeast side of the island, to the Atchafalaya River.

■ All of Deer Island except that part of the north end which is within the De Hart patents, forms part of a vast area of marsh land—126,000 acres—belonging to the plaintiff in this suit. Therefore, the shell mound, or elevation, claimed by the plaintiff and occupied by the defendant, is within the vast area covered by the plaintiff's title deeds. The defendant claims that the patents which were issued to his grandparents conveyed title to the shell mound, or elevation, now in contest, because of the reference, in the patents, to the official plat of survey then on file in the State Land Office, which plat of survey represented to the purchasers of the land from the State that the shell mound, or elevation, was within the area described in the patents. Our opinion, however, is that the mere reference to the official plat of survey, which indicated that there was a shell mound, or an elevation, within the area described in the patents, did not convey title to the shell mound, or elevation, which was not within the area described, but was half a mile away from it. If the shell mound, or elevation, had been described in terms, in the patents, so as to indicate that the intention was to convey title for the shell mound, or elevation, wherever it might be actually located on the land, then the description of the sectional subdivisions might be disregarded. But the land that was conveyed by the patents was described therein according to sectional subdivisions which stated correctly the exact area and location of the land that was conveyed. The picture of the shell mound, or elevation, on the official plat of survey, which is referred to in the patents, merely deceived the De Harts, with regard to the character and the actual location of the land which their patents called for.

■ The defendant's plea of prescription of ten years is founded upon the fact that an examination of the official plat of survey, referred to in the patents, would have indicated that the patents conveyed title for the shell mound, or elevation, now in contest. It is true that, in determining whether a description in a deed is sufficient to support a plea of prescription of ten years, resort may be had to another public record, such as a plat of survey, if it is referred to in the deed. Frantom v. Nelson, 142 La. 850, 77 So. 767; Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648. But the two patents, as well as the plat of survey referred to in the patents under which the De Harts took possession of the shell mound, or elevation, now in contest, described accurately a tract of land half a mile distant from this shell mound, or elevation. Hence the doctrine that seems appropriate to this case is that possession of a tract of land other than the tract described in the possessor's title cannot support a plea of prescription of ten years. Albert Hanson

Lumber Co. v. Angelloz, 118 La. 861, 862, 43 So. 529; Salmen Brick & Lumber Co. v. H. Weston Lumber Co., 144 La. 186, 80 So. 249. The conclusion which we have reached, however, concerning the plea of prescription of thirty years, makes it unnecessary to decide whether the plea of prescription of ten years is well founded.

Jesse De Hart and his wife, the grandparents of the defendant in this suit, went into possession as owners of the shell mound, or elevation, now in contest, some time between the years 1869 and 1879. As we have said, Jesse De Hart filed the necessary proof in the State Land Office, on or before the 11th of March, 1879, of his having settled upon and cultivated this land under a certificate of entry dated March 25, 1872. The De Harts first built their residence on the western part of the elevation, near the Atchafalaya River. A storm destroyed the house soon after it was built, and the De Harts then built their residence on the eastern side of the mound, where they spent the rest of their life. Jesse De Hart died there on December 5, 1891, and was buried in the family cemetery, on the shell mound. Mrs. De Hart continued living in the family residence on the mound, with her daughter, Irene De Hart Lacoste, and the latter's husband, Thomas Lacoste. Mrs. Jesse De Hart died there on August 2, 1906, and was buried beside her husband. Thomas Lacoste and his wife continued residing in the De Hart residence on the mound to the end of their life. Mrs. Lacoste died on September 2, 1925, and was buried in the family cemetery, on the shell mound.

Thomas Lacoste died on September 14, 1927, and was buried beside his wife. The De Harts had eight children, all born and raised on the property now in contest; and there have been born seventy or more grandchildren, and thirty-five or more greatgrandchildren. Mrs. Irene De Hart Lacoste was, as we have said, one of the eight children of Mr. and Mrs. Jesse De Hart. Mr. and Mrs. Thomas Lacoste are survived by seven sons and four daughters, all born and raised on the property now in contest. Norman Lacoste, the defendant in this suit, who is one of the seven sons of Thomas Lacoste, remained with his parents until their death, and thereafter continued residing in the old De Hart residence up to a short time before this suit was filed. One of his sisters, Arcillia Lacoste, who had married Emile Aucoin and had moved away from the shell mound, returned there with her husband when her father died, and the Aucoins thereafter resided on the mound until about two years before this suit was filed. By that time the old residence was in a dilapidated condition, and uninhabitable; but thereafter, as we understand, Norman Lacoste and the Aucoins repaired the old house and built a cheaper one on the northeast end of the shell mound, and they were yet residing on the mound when this suit was tried. The De Harts and Lacostes and the Aucoins were fishermen and trappers. The only access to the shell mound was by boats; and it is so yet, because the shell mound is the only high spot in a vast area of very low sea marsh. When the De Harts built their second residence on the shell mound, more than forty-

five years before this suit was filed, they dug a canal from Deer Island Bayou, northwestward to the shell mound, where they built a wharf, and tied their boats, near their residence. For a period more than fifty years before this suit was filed, the De Harts and in turn the Lacostes cultivated a garden on the mound; and they maintained an orchard of orange trees, fig trees, peach trees and pecan trees. The orange trees and the pecan trees extended over the west part of the mound, on the river side; and there was a row of fruit trees extending all the way around the edge of the mound, from and to the river bank. Two of the most important witnesses for the plaintiff corroborated the witnesses for the defendant, on that subject, and there was no contradiction of the testimony. The cemetery, which seems to measure about 40 by 80 feet, was enclosed within a wire fence, which was yet intact when this suit was filed; and the headstones bear the names of Mr. and Mrs. Jesse De Hart and of many of their descendants. The residence also was enclosed within a fence, and so was the vegetable garden. And, according to the testimony, the fruit trees were likewise protected from destruction or injury by the cattle and hogs which the De Harts and the Lacostes raised on the land —as long as the trees needed such protection. The civil engineer who surveyed the land for the plaintiff after this suit was filed, and who testified for the plaintiff, said: "There were signs of possession of the land all over the land." And it is conceded that these signs of possession are the signs of possession by the De Harts and the Lacostes, and by no one else but the members of these families.

It is conceded by the plaintiff that the defendant has a valid title, by the prescription of thirty years, for the land within the fence surrounding the old De Hart residence, and for the land within the fence enclosing the graveyard. As to these enclosures the defendant set up as a defense a plea of estoppel, which was pleaded as a defense against the defendant's claim to any part of the land in contest; but, in the brief the defendant waives the plea of estoppel in so far as the graveyard and the land within the fence enclosing the old residence are concerned.

As to the remaining part of the shell mound, or elevation, outside of the graveyard and the homesite, the plaintiff invokes article 3503 of the Civil Code, which declares that the prescription of thirty years cannot prevail beyond the area or extent of the land actually possessed by the party pleading the prescription. The doctrine is recognized in Prevost's Heirs v. Johnson, 9 Mart., O.S., 123; Ellis v. Prevost, 19 La. 251; Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648; and Ernest Realty Co. v. Hunter Co., 189 La. 379, 179 So. 460. Article 3437 of the Civil Code declares that, in order for a person to take possession of an estate as owner, it is not necessary for him to pass over every part of it, but it is sufficient if he enters upon and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries. In the Leader Realty Company Case it is said that the word "bound-

aries", in article 3437 of the Code, means the limits or marks of enclosure if the possession be without title, or the limits stated in the title deed if the possession be under a title. But it is not necessary for a person who takes possession of a tract of land to build a fence around it, in order to fix the boundaries of what he intends to possess, if the limits of his possession are marked by natural boundaries and if he actually possesses or uses all of the land within the boundaries. The shell mound, or elevation, in contest in this case, is admitted to be from two to six feet higher than the sea marsh adjoining it. It is bounded on the west side by the Atchafalaya River and on all other sides by the low sea marsh, which for the most part is inundated and impassable. The elevation embraces a considerable area of cultivable soil, besides the deposit of clam shells— 181,047 cubic yards. It is conceded that the elevation is clearly defined and distinguishable from the adjacent sea marsh. The elevation is located on the dividing line between fractional Sections 19 and 30, and extends in a northeastern direction from the river nearly to or perhaps just beyond the east boundary of Section 19. The area of the elevation being only about ten acres, it is very believable that the large family that was born and raised there went upon or used in some way every part of the space. The uncontradicted evidence shows that to be a fact. The fact that the old residence had become uninhabitable, and that no one was living on the shell mound during a few years before this suit was filed, is not important, in the light of article 3502 of the

Civil Code, which provides that one may retain civil possession of an estate, sufficient for the prescription of thirty years, "so long as there remain on it any vestiges of works erected by him; as, for example, the ruins of a house."

██ Our conclusion is that the judge of the district court was right in maintaining the plea of prescription of thirty years, as far as the shell mound, or elevation, actually occupied by the defendant, is concerned. The judge, in the reasons which he gave for his judgment, expressed the opinion that the plea of prescription of thirty years should prevail even as to the marsh land lying between parallel lines extending eastward from the Atchafalaya River to the bayous, and being tangent with the northeast end and the southwest end, respectively, of the shell mound or elevation. But we do not find any good reason why the plea of prescription should prevail for any land beyond the shell mound, or elevation, the area of which is about ten acres, and which is well defined and distinguishable from the adjacent sea marsh. The only land sued for by the plaintiff is this shell mound, or elevation. The decree of the district court, maintaining the plea of prescription of thirty years and rejecting the plaintiff's demand, must be, and is in fact, limited to the area of land sued for. And we shall so construe the decree in our affirmance of it.

The plaintiff's plea of estoppel was made, for the first time, in a supplemental petition, filed two years and ten months after this suit was filed. Six months after the suit was filed the plaintiff leased its

575

576

vast area of marsh land to one Harry Wainer, for the trapping of muskrats and other fur-bearing animals; and he transferred the lease to a Delaware corporation called Wainer Fur Corporation, of which he was president. Three months afterwards, and while this suit was pending in the district court in Terrebonne Parish, the Wainer Fur Corporation filed a bill in equity in the District Court of the United States, in New Orleans, complaining that Norman Lacoste and eight other defendants were trespassing, by trapping muskrats, on Sections 17, 21, 22, 23, 24, 27 and 28, in T. 18 S., R. 12 E. These seven sections have an area of 4,480 acres, and form part of the 126,000 acres of sea marsh belonging to the plaintiff in this suit, and leased to the Wainer Fur Corporation. But the nearest one of these seven sections to the land in controversy in this suit is Section 17, which is distant a quarter of a mile from the land described in the De Hart patents, and nearly a mile from the land in controversy in this suit. The other six sections described in the bill of complaint extend from a distance of ¾ of a mile to a distance of 4¾ miles from the shell mound, and about the same distance from the land described in the De Hart patents. At least seven, and perhaps all, of the defendants in the suit brought by the Wainer Fur Corporation in the Federal court were members of the Lacoste family. The Wainer Fur Corporation, in its bill of complaint, asked for and obtained an order on the defendants, Norman Lacoste and others, to show cause why a preliminary injunction should not be granted, restraining them from tres-

passing upon the land described in the bill of complaint. Two weeks later, the attorney representing the Wainer Fur Corporation in New Orleans, who was not one of the attorneys representing the Continental Land & Fur Company in this suit in Terrebonne Parish, and a New Orleans attorney representing the defendants in the suit in the Federal court, who did not represent the defendant in the present suit in the Parish of Terrebonne, made and signed the following stipulation in the suit in the Federal court—viz.:

"The plaintiffs and defendants herein have agreed that an injunction pendente lite shall issue herein, as prayed for, provided that there shall be excluded therefrom the land claimed by defendants and described as SW¼ of NW¼ and NW¼ of SW¼ of Section 20, and the SE¼ of NE¼ and NE¼ of SE¼ of Section 19, all in Township 18 S., R. 12 E, * * * containing 162 acres, as per U. S. Township plat.

"It is further agreed that when a survey of the above described land shall have been made by T. Baker Smith, C. E.; and the boundaries thereof marked and established by him, said injunction shall be made absolute, except as to said land above described; all other rights of the parties being mutually reserved."

Under this agreement, the Judge of the District Court of the United States for the Eastern District of Louisiana signed an order granting the injunction pendente lite, on a bond of $500, but excluded from the injunction the 162 acres of land de-

scribed in the agreement or stipulation. That is the same tract of land that is described in the De Hart patents, and is not the land in contest in the present suit. The plaintiff in this suit employed the civil engineer, T. Baker Smith, to make the survey; the result of which, as we have said, was that the shell mound, which the Lacostes and their ancestors had occupied as their place of residence, and as owners, for sixty years or more, was located nearly a quarter of a mile from the land described in the patents under which they claimed title to the land. The plaintiff in this suit, therefore, filed the plea of estoppel. The defendants in the suit in the Federal court then filed an answer, setting forth that this petitory action of the Continental Land & Fur Company, contesting the title to the shell mound on Deer Island, was pending in the district court in Terrebonne Parish when the Wainer Fur Corporation filed its bill of complaint in the Federal court. Hence the defendants in that suit prayed that the land in contest in the suit in the district court in Terrebonne Parish should not be included in any order for an injunction granted by the Federal Judge until the judge of the district court in Terrebonne Parish had exercised his jurisdiction over the land in contest, and then only in the event that the judgment of that court should go against the defendant, Norman Lacoste. The answer of the defendants in the suit in the Federal court was filed by the attorneys who represent the defendant, Norman Lacoste, in the present suit; and, in the answer, it was admitted that the order for the injunction pendente lite was granted

in accordance with the agreement or stipulation which we have quoted in this opinion. The record in the present suit does not show that any further proceedings were had in the suit in the Federal court.

In support of the plea of estoppel, in this suit, the plaintiff, Continental Land & Fur Company, showed that the survey made by T. Baker Smith, Civil Engineer, cost the company $1,450.86. The reason why it cost so much to make the survey seems to be that the surveyor found it necessary to traverse the east shore of the Atchafalaya River for a distance exceeding ten miles—from Creole Pass, in Section 22, in T. 19 S., R. 12 E., to Cutoff Bayou, at the northwest corner of Section 5, in T. 18 S., R. 12 E.,—in order to establish the corners of the 162.07 acres of land described in the De Hart patents.

We concur in the opinion of the judge of the district court that the plea of estoppel is not well founded. In the first place, the Continental Land & Fur Company was not a party to the suit in the Federal court, and was not under any obligation to have the survey made, or to pay for it. The agreement that was made by the parties to the suit in the Federal court served as an inducement to the plaintiff in the present suit to have the survey made at its own expense, but the plaintiff's inducement or purpose in having the survey made was to determine whether it would result in causing the agreement that was made in the suit in the Federal court to constitute an abandonment on the part of the defendant in this suit of his claim of title to the shell mound, which was the

only land in contest in this suit, and which the defendant and his ancestors had been occupying for sixty years or more. We must bear in mind that the 162-acre tract of land described in the agreement that was made in the suit in the Federal court was never in contest in that suit or in the present suit. It was admitted by counsel for the plaintiff on the trial of this suit that the land sued for by the plaintiff and in the actual physical possession of the defendant was the shell mound, or elevation, which was said to be well defined. The defendant and his ancestors have never possessed any other land. The agreement, therefore, which was made in the suit in the Federal court, was intended by the defendants to refer to 162 acres of land embracing the shell mound, of which Norman Lacoste was in possession as owner. From the fact that the 162 acres of land described in the agreement made in the suit in the Federal court was not a part of the land described in the bill of complaint in that suit, it seems that the attorneys who signed the agreement, and the litigants who authorized and made the agreement, were not well informed as to the location of the land claimed and occupied by Norman Lacoste. It is impossible that he intended, by the agreement made in the suit in the Federal court, that, for the mere saving of the cost of a survey of 162.07 acres of land, he would risk the loss of the land which he and his ancestors had been claiming and occupying as owners for more than sixty years—to say nothing of the ancestral home, and the cemetery, and all that. The agreement did not call for the *locating* of the land in contest in the present suit, according to government subdivisions. The agreement called for the excluding from the writ of injunction "the land claimed by the defendants and described as SW¼ of SE¼", etc. The land claimed by the defendants, or at least by one of them, Norman Lacoste, was 162 acres of land embracing the shell mound, in contest in this suit. To that end it was stipulated that the 162 acres should be surveyed "and the boundaries thereof marked and established." But it was not intended to authorize the civil engineer to make a survey that might have the effect of ousting the defendant, Norman Lacoste, from the land in contest in the present suit. The purpose of having the survey made, and of having the boundaries marked and established, was to determine how far the defendants in the suit in the Federal court might go, beyond the shell mound, and upon the adjacent marsh land, in their trapping of muskrats, et cetera.

A number of persons claiming to be the heirs of Isiah De Hart, deceased, who was a son of Mr. and Mrs. Jesse De Hart, intervened in this suit and asked to be recognized as part owners of the land in contest; but the attorney who filed the petition of intervention afterwards withdrew his name as attorney for the interveners; and it does not appear that the petition of intervention was ever put at issue, or that any further proceedings were had in the matter. The judgment that was rendered in this case, therefore, does not purport to pass judgment upon the rights of the interveners, or of any one but the plaintiff and defendant in this suit.

The judgment appealed from, maintaining the defendant's plea of prescription of thirty years and rejecting the plaintiff's demand for the land described as the shell mound, or elevation, having an area of about ten acres, on the east bank of the Atchafalaya River, on Deer Island, and situated about midway between the north end and the south end of the island, is affirmed, at the cost of the plaintiff, appellant.