322 So.2d 243 (1975)
Clifford J. RYDER, Plaintiff-Appellee,
v.
Narcisse LACOUR, Defendant-Appellant.
No. 5114.
Court of Appeal of Louisiana, Third Circuit.
October 2, 1975.
Rehearing Denied November 13, 1975.
Writ Refused January 9, 1976.
*245 Thistlethwaite & Thistlethwaite by Hugh William Thistlethwaite, Jr., Opelousas, for defendant-appellant.
Sandoz, Sandoz & Schiff by Gerald H. Schiff, Opelousas, Pavy & Boudreaux by Albert J. Boudreaux, Opelousas, for plaintiff-appellee.
Before HOOD, CULPEPPER, and MILLER, JJ.
MILLER, Judge.
In this petitory action, defendant Narcisse Lacour appeals the judgment recognizing plaintiff Clifford J. Ryder's ownership of the disputed 7.15 acre tract. We affirm.
The issues relate to burden of proof and title.
Plaintiff Ryder claims ownership by purchase and a chain of title to the heirs of the Boagni estate, who themselves acquired by judgment of possession in 1932. Plaintiff alleged defendant was not in possession. Defendant Lacour claims the disputed tract is included in his title or alternatively he acquired the disputed tract by acquisitive prescription of ten and thirty years. Defendant claims to be in possesion of the disputed tract.
The trial court held neither party established possession during the year prior to trial and plaintiff established better title.

BURDEN OF PROOF
LSA-C.C.P. art. 3653 provides that possession is the factor which determines plaintiff's burden of proof, but that article does not define possession. Possession requires not only detention but also the intent to possess as owner. Planiol, Civil Law Treatise § 2263f, (Louisiana State Law Institute Translation). Therefore, the possession required to put the harsh burden on plaintiff of making out his title, is the same possession required to initiate the possessory action or to establish acquisitive prescription. LSA-C.C.P. art. 3660. The possession must have lasted for at least one year and the nature of the corporeal possession is governed by the use for which the immovable is intended. Gore v. Ronaldson, 200 So.2d 46 (La.App. 1 Cir. 1967); Clayton v. Langston, 311 So.2d 74 (La.App. 3 Cir. 1975).
Defendant alleges he established possession of the tract by cutting grass, grazing cattle and repairing fences. It is important to note that defendant is seeking to establish initial possession by these acts. His claim to title is rejected for reasons assigned hereinafter, so CORPOREAL, not constructive or continuance of civil possession is at issue.
Defendant himself testified repeatedly that when he first occupied his property and subsequently purchased the interest of his mother and co-heirs he did nothing with the disputed tract. He never farmed it (Tr. 152, 157) and didn't use it (Tr. 158, 168, 176). Some time beginning eight or nine years ago, defendant cut the grass several times (Tr. 158) and once saved the hay (Tr. 157). There is no evidence *246 the tract was especially good or only good for hay. No evidence or testimony indicates the tract has been used for hay before or since. While these acts were not inappropriate use of the land in its then existing condition, they do not establish corporeal possession.
Defendant makes a strong claim that he enclosed the property with fences. The eighty year old Lacour, his wife and daughter testified he repaired fences and (in 1970 or '71) took down one section of fence separating his 40 arpent tract from the disputed tract to create access to his remaining property. Testimony describing the state of the fences at relevant times and places varied a great deal, but all parties agreed to two things. The property had been fenced on its four sides long before 1930. The gap or gate connecting the disputed tract to plaintiff's other properties remained in operation until 1970 or '71 when defendant stretched a wire across the gap, long after ownership came into dispute. Relevant here is the fact that after Lacour allegedly reworked the fences, plaintiff granted a three year grazing lease to a neighbor which included the disputed tract. The neighbor grazed his cattle there and paid Ryder $45 or $50 as rental for this and the adjacent tract. Tr. 230-1. When Lacour was specifically questioned about this use of the property without his permission, his response was "maybe so" (Tr. 159). There is no manifest error in the trial court's credibility determination and his rejection of Lacour's testimony that he enjoyed continuous and exclusive use of the tract.
Further, Lacour's acts are not seriously inconsistent with usage of the tract at the sufferance of plaintiff's ancestors in title (Tr. 122). Therefore, defendant is not in possession in the sense required by LSA-C.C.P. art. 3653 to put on plaintiff the harsh burden of "making out" his title.
We note the long history of this dispute. Both parties testified to negotiations to settle the title dispute as long as fourteen years ago. Lacour testified he wanted "to get my piece of land back." Tr. 160. Carriere corroborated Lacour's statement that he had disputed plaintiff's earlier ancestor's title. Tr. 214. During the many years of this title dispute, intermittent acts attempting possession have occurred on both sides. As a matter of policy, it would be unwise to allow the last corporeal act to radically alter the parties' situation. This would encourage physical confrontations and elevate self help to a status never enjoyed in a civilian jurisdiction.
Both the character of the alleged acts of possession of plaintiff's ancestor in title and plaintiff's subsequent acts amply support the trial judge's determination that defendant was not in possession.

PLAINTIFF'S TITLE
To succeed in the petitory action, plaintiff must establish his title to the property in question. The disputed tract lies within the boundaries set forth in the July 13, 1967 deed by which he acquired properties from S & E Realty Corporation. In August of 1958 S & E acquired the disputed tract from Danel-Ryder Inc. That corporation acquired it from James DeJean in October, 1957 and in 1948 DeJean acquired the disputed tract in a separate act from heirs of the Boagni estate. The Boagni heirs acquired it through judgment of possession describing the north boundary of this property as the south boundary of land belonging to defendant's ancestor.
Defendant attacks this chain of title in two ways. First, he contends the sale from the Boagni heirs is null since the estate had been seized and sold by executory process prior to DeJean's purchase. Secondly, even if plaintiff established title, he did not establish title beyond 1932. Defendant Lacour contends plaintiff's action must fail in that plaintiff failed to establish title "good against the world."
The trial judge held the description in the mortgage foreclosure and sale (of the *247 Boagni estate) did not affect the disputed tract. We agree. The property description in the foreclosure begins by reciting the boundaries of adjoining estates, but specifically designates the acreage conveyed in terms of quarter section lines. The descriptive call pertinent to this dispute limits the seizure and conveyance to the southeast quarter of the southeast quarter of section 22. The tract in dispute is a narrow strip adjacent to and north of that line. The disputed tract was not involved in the foreclosure sale because the quarter section line is recited as the north boundary of the seized property.
A specific boundary is preferred rather than a general description or a recitation of the number of acres. Beugnot v. New Orleans Land Company, 139 La. 687, 71 So. 947 (1916); Lafayette Parish Police Jury v. Perroncel, 212 So.2d 152 (La. App. 3 Cir. 1968). There is no manifest error in the trial court's holding that Ryder has established a better title than that of Lacour.
Lacour's second contention is that plaintiff is required to go beyond record title to prove title "good against the world."
Since Lacour alleged both title to and possession of the disputed tract and was found to be without either, the present problem is distinguished from that considered by this court in Deselle v. Bonnette, 251 So.2d 68 (La.App. 3 Cir. 1971), approved in Pure Oil Company v. Skinner, 294 So.2d 797 (La. 1974).
On the issue of plaintiff's burden of proof in the petitory action, those cases considered the effect of defendant's complete lack of title to support his possession. Despite the implication in the Official Revision Note for art. 3653, that this circumstance might affect the burden of proof and some prior jurisprudence to the same effect, the Supreme Court and this court held defendant's lack of title did not affect the burden imposed by C.C.P. art. 3653. Possession is the controlling factor. Lacour is not in possession. Therefore in this case, plaintiff is only required to prove better title.

DEFENDANT'S TITLE
Defendant asserts he has record title through a deed to his father, a subsequent judgment of possession, and his purchase of the interests of his mother and co-heirs. That title contained 40 arpents, more or less, bounded by properties owned by named neighbors to the north, east, south, and west.
The additional acreage made up by the disputed tract would increase defendant's tract by some 16% which is a substantial amount for the small deviation contemplated by "more or less."
Although defendant testified that he considered the disputed tract to be part of his 40 arpents, there is a plat of survey made at his request showing the disputed tract to be a separate tract. Tr. 36, 58. Furthermore, the servitude granted by defendant Lacour to Shell Pipe Line Corporation in 1942 separately describes the disputed tractthere as 7 acres.
Defendant has not seriously argued to us that he has record title to the disputed tract.

PRESCRIPTION
Having held Lacour's title to 40 arpents does not include the disputed tract, and noting defendant alleges no other act translative of title, there can be no acquisitive prescription of ten years on his part.
The claim of thirty years acquisitive prescription is defeated by defendant's own testimony. He testified that when he acquired his 40 arpents, the disputed tract was being farmed for DeJean. He cannot benefit from the alleged earlier possession on the part of his father because of this interruption to which defendant himself testified (Tr. 176). Lacour testified at Tr. *248 152, 153, 157, that he did not farm or do other acts appropriate to possession. In response to a direct question, Lacour admitted he had done nothing during the twenty-five years he claimed possession prior to 1970 or '71 when he took down part of the fence between his 40 arpent tract and the disputed tract.
For thirty year prescription, possession must be corporeal at its inception. Chamberlain v. Abadie, 48 La.Ann. 587, 19 So. 574 (1896); Ree Corp. v. Shaffer, 261 La. 502, 260 So.2d 307 (1972). By defendant's own testimony, the only acts which might constitute corporeal possession commenced some eight or nine years ago. Tr. 158, 160. Finally, we note the unrefuted testimony that plaintiff's ancestors in title leased the disputed tract for farming and received a share of the crops. All this was subsequent to the alleged acts of possession by defendant's ancestor in title.
In conclusion, Ryder and his ancestors in title, Danel and DeJean, maintained possession of the disputed tract from 1948 until 1970 or '71 when Lacour tore down part of the north fence and stretched a wire across the gap in the west fence. Other than making these fence alterations, Lacour did not exercise acts of possession of the disputed tractat least there is no manifest error in the trial court's finding that he did not. Plaintiff has shown a descriptive title to the tract in dispute going back beyond 1930. Defendant has shown no title. This satisfies plaintiff's burden under C.C.P. art. 3653 to prove better title to the property in dispute.
The trial court judgment is affirmed at appellant's costs.
Affirmed.
CULPEPPER, J., dissents and assigns written reasons.
CULPEPPER, Judge (dissenting).
I am of the opinion the evidence shows clearly that the defendant Lacour was in possession of the 7-acre tract of land at the time plaintiff filed this petitory action.
A most important fact, not mentioned in the majority opinion, is that this suit was filed on July 18, 1973. The threshold question is whether the defendant had been in possession for at least one year prior to that date.
The majority opinion correctly states the applicable rule of law. The plaintiff in a petitory action against a defendant in possession has the burden to "make out his title". LSA-C.C.P. Article 3653. Our Supreme Court has construed this to mean that the plaintiff must prove either that he has a perfect record title, good against the world, without regard to the title of the defendant in possession, or that plaintiff has acquired ownership by acquisitive prescription. Pure Oil Company v. Skinner, La., 294 So.2d 797 (1974).
If the defendant in the present case is in possession, then there is no question that the plaintiff has failed in his burden of proof. Plaintiff's recorded title goes back only to 1948, when James DeJean acquired the property from the Boagni heirs. It is also clear from the record that plaintiff has failed to prove ownership by the acquisitive prescriptions of either 10 or 30 years.
The majority opinion correctly states that the 7-acre tract in question had been fenced on its four sides long before defendant Lacour acquired his 40 acres from his mother and coheirs of his father in 1942. Defendant Lacour testified he understood the 7 acres was included within the approximately 40 acres which he acquired. He had the property surveyed in 1945. A copy of this survey, filed in the record, shows the fences which existed on all four sides.
It is conceded by both the plaintiff and defendant that beginning at the time when DeJean acquired his deed from the Boagni estate in 1948, there has been a dispute as to the ownership of the property. Both *249 sides testified as to acts of possession which occurred since 1948. Plaintiff makes much of the evidence that shortly after DeJean purchased from the Boagnis, one of his tenants farmed a portion of the 7 acres for two years. Lacour says that he knew about this, but that during the second year he told the tenant that he owned the land and thereafter no attempt has been made by anyone to cultivate the land again.
The defendant Lacour testified that eight or nine years ago, after the failure of attempts to settle this dispute with the plaintiff Ryder and his ancestors in title, the defendant took affirmative action to establish his possession of the 7-acre strip. He says he closed up the gap in the fence on the west and adjacent to plaintiff's property by putting fence wire across it. At the same time, defendant removed about the west half of the fence along the north side of the 7-acre strip, thereby opening up the strip to access from the remainder of defendant's property.
Defendant Lacour and his wife and daughter all testified that after closing up the gap leading to plaintiff's property and removing the west half of the fence on the side next to defendant's property, the defendant maintained the fence, grazed his cattle, clipped the pasture and cut hay on the 7 acres. In addition, defendant testified that he was on the property almost daily to see after his cattle.
There is no evidence to contradict this positive testimony by defendant Lacour that he maintained the fence enclosing the 7 acres as part of his farm for eight or nine years prior to the date this suit was filed. Most importantly, the plaintiff Ryder himself corroborates this evidence as to defendant's possession. Ryder admits that during the last ten years he has been on the 7 acres only about six times and then to go dove hunting, that on these occasions he went over the fence which had been placed across the gap on the west end of the property, and on leaving he went back over this fence. Furthermore, Ryder admits that he knew the gap on the west end had been closed off and that the fence along the north side had been removed. Yet he took action to assert his rights to the property until he filed this suit, which was several years later. Because of its importance in this case, I quote the following from the testimony of Ryder himself:
"Q. When was the last time that you went on the property?
A. Last year, first part of'73.
Q. Now this time when you went on the property you did have to climb the fence, didn't you?
A. Yes.
Q. Well when the north fence was taken down you didn't take any action to put it up?
A. I did not.
Q. You didn't try to see who had taken it down?
A. No, I did not.
Q. Then you intended to leave it open?
A. I was waiting on a decision to find out whether I owned it or Mr. Narcisse.
Q. So you knew that he had taken down the fence?
A. I did not say he took it down.
Q. You don't know who took it down?
A. That's correct.
Q. How long ago did you lease that seven acres for the cattle to go on to Mr. Brown?
A. That's been about four years ago to last year.
Q. Now when the fence was put up on the west blocking you off from the *250 rest of the property that you are claiming, you did nothing about that either?
A. No, I did not.
Q. And how often in the last three years have you been on your property, the property that you are claiming? This seven acres?
A. Oh, maybe a half a dozen times.
Q. And you have only been on it for hunting?
A. That's correct.
Q. And then you go back over the fence and leave?
A. That's correct.
Q. In this half a dozen times you don't know if Narcisse Lacour had been on the property?
A. Not when I was there.
Q. But you have only been there say six times in the last ten years?
A. That's right."
I fail to see how the testimony of the defendant and his wife and daughter, as admitted and corroborated by the plaintiff Ryder himself, can leave any question that more than one year before this suit was filed Lacour fenced in this 7 acres as part of his farm and that he corporeally possessed it as owner.
The majority opinion makes much of Ryder's testimony that he leased the 7 acres, along with another 17-acre tract, west of defendant's land, to a Mr. Brown, who owned some property on the east end of the 7-acre tract in question. Ryder testified under direct examination that he had leased the property to Brown and that Brown had used the 7 acres as a passageway for his cattle to reach the 17 acres on the west end of the 7-acre tract. However, Ryder did not testify that he ever saw Brown's cattle on the 7 acres. In view of his testimony quoted above, that he had only been on the property six times during the last ten years, and then for the purpose of hunting doves, it is apparent that Ryder's statement that Brown's cattle had crossed on the property is pure hearsay. It is very difficult to believe that Brown's cattle could have crossed on this 7-acre tract in view of the testimony of all of the witnesses, including the plaintiff himself, that the property was enclosed by fences as part of defendant's farm. How could Brown's cattle have gone through these fences? It is also most important to note that Brown did not testify in this case. If plaintiff relies so heavily on Brown's alleged use of the property, why did not he call him as a witness?
The majority opinion states that when Lacour was questioned about the possibility that some of Brown's cattle had been on the 7-acre strip during the last few years, he answered "maybe so". The complete testimony is as follows:
"Q. Do you know Mr. Stanley Brown?
A. Stanley Brown? Yes.
Q. Did he ever graze any cattle on that land?
A. Not as I know.
Q. He may have though?
A. Yeah, maybe so, I don't know. (Emphasis supplied)
Q. Are those fences still around that land?
A. On yes sir. That fence around that, yes sir.
Q. All the way along the north boundary of the seven acre tract?
A. Yes sir.
Q. Separating your bigger piece of property where you live, your home from the seven acres?
A. No, no, it's not divided, you see all that is in one now. Part of it is all in one.

*251 Q. What part?
A. Well the west side of it is all in one course I have gates to open to let my cattles go in there."
The majority implies that this is an admission on the part of Lacour that Brown's cattle used the property without defendant's objection. Viewed in context, it seems clear to me that this 80-year old defendant testified Brown's cattle may have on some occasion broken through the fence and gone onto the property without Lacour's knowledge. What farmer would swear that his neighbor's cattle had never jumped the fence and come on his land? The quoted testimony as a whole shows clearly that if one of Brown's cows ever was on the property, Lacour did not know it. Certainly, the testimony cannot be construed to mean defendant knew Brown's cattle were on the property, yet he made no objection.
The majority opinion concludes with the following statement:
"In conclusion, Ryder and his ancestors in title, Danel and Dejean, maintained possession of the disputed tract from 1948 until 1970 or '71 when Lacour tore down part of the north fence and stretched a wire across the gap in the west fence. Other than making these fence alterations, Lacour did not exercise acts of possession of the disputed tractat least there is no manifest error in the trial court's finding that he did not."
Of course, this being a petitory action, the plaintiff Ryder cannot contend that he was in possession on the date suit was filed. Even assuming that plaintiff or his ancestors in title at one time had possession, plaintiff admits, by filing this petitory action, that he lost this possession. I think the evidence shows clearly that possession was lost by plaintiff when defendant closed the gap in the fence on the west end of the property and tore down part of the north fence, thereby enclosing the 7 acres with the remainder of defendant's farm. The majority opinion says this happened in 1970 or 1971, instead of nine or ten years ago. Even admitting that defendant did not enclose the 7 acres as part of his farm until 1970 or 1971, this was more than a year before this suit was filed in 1973.
Accepting as correct the facts stated in the above quoted portion of the majority opinion, it is my view that as a matter of law these acts of possession by Lacour are sufficient. The majority opinion admits that more than a year before this suit was filed Lacour closed up the gap in the west fence and tore down part of the north fence, thereby enclosing the 7 acres with the remainder of defendant's farm, where he lived and raised cattle. I think, as a matter of law, if a person claiming to be the owner encloses a tract of land with a fence, which makes the tract a part of the remainder of his farm, and thereby excludes others from use of the tract, this alone constitutes corporeal possession. As I view it, the majority opinion stands for the proposition that such acts of possession are not sufficient. The majority would require that a person pass over every part of the land, as by cultivation. For this type of property, I think it is sufficient to enclose it with a fence, making it a part of the rest of the farm, and to claim it as owner.
For the reasons assigned, I dissent.
In my original dissenting opinion, I assumed the applicable rule of law in this case is so well recognized that I did not cite authorities. The rule is clearly stated in the landmark case of Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952). The issue there was whether the plaintiff had the requisite possession to bring the possessory action. After stating that the nature of the possession required for the possessory action is the same as that for the acquisitive prescription of 30 years, the court then discussed the required possession with particular *252 reference to the nature and effect of enclosures.
The court stated:
"We recognize also that under the jurisprudence a person claiming by possession alone and without title is required to show an adverse possession by enclosures, and that his claim will not extend beyond such enclosures. But, when this jurisprudence is considered with the articles of the Code announcing the law applicable to such cases, we do not think that a strict interpretation should be given to the word `enclosures'.
"We are supported in this view by the interpretation given by this court in the case of Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648, 651, to the word `boundaries' as used in Article 3437 of the Civil Code dealing with possession. That article provides: `It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries.' In that case this court said that `* * * The word "boundaries," in that article, means the limits or marks of inclosure if the possession be without title, or the boundaries or limits stated in the title deed if the possession be under a title. * * *' (Italics ours.)
* * * * * *
"What the court means by `enclosures', as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof."
Other cases, which have applied to the situation where possession is without title the rule of Article 3437 that corporeal possession of a part constitutes corporeal possession of the whole of the land within enclosures, are Continental Land & Fur Company v. Lacoste, 192 La. 561, 188 So. 700 (1939); Long v. Chailan, 196 La. 380, 199 So. 222 (1940); Labarre v. Rateau, 210 La. 34, 26 So.2d 279 (1946); Gaudet v. Lawes, 197 So.2d 723 (La.App. 1st Cir. 1967); Robertson v. Morgan, 116 So.2d 141 (La.App. 1st Cir. 1959); Winn v. Calhoun, 94 So.2d 545 (La.App. 2d Cir. 1957), and Peters v. Crawford, 185 So. 716 (La. App. 2d Cir. 1939).
I do not agree with the factual conclusion of the majority that the defendant Lacour did not enclose the disputed 7 acres with a fence until 1970 or 1971. Nevertheless, even accepting as true the majority's conclusion of fact, it is clear that under the above stated rule of law the defendant had possession of the disputed tract for more than a year prior to the time this suit was filed in 1973.
For purposes of clarity, I am attaching a copy of the plat filed in the record, showing the approximately 7 acres in dispute. It is not disputed that Lacour had a fence all around the 39.72 acres of land to which he has record title, and where he has his residence and cultivated field. Even under the majority finding of fact, in 1970 or 1971 Lacour tore down that part of the north fence of the 7 acres indicated by the line "A-Y" as shown on the attached plat, and he closed up the "GAP" shown in the west fence of the 7 acres, thereby enclosing the 7 acres within a fence which extends all the way around the 7 acres and the 39.72 acres where defendant lives.
Under the rule stated above, that where possession is without title, possession of part constitutes possession of the whole of the property within enclosures, it is clear that defendant's corporeal possession of the property on which he lives constitutes possession of the entire 7 acres which is now enclosed by his fence. It appears to me *253 that the majority decision is in direct conflict with this established rule.
For the reasons stated, I am of the opinion that a rehearing should be granted.