LOTTINGER, Judge.
This suit was filed on June 4, 1958 by nineteen petitioners, none of whom are residents, nor have they ever lived, in Louisiana. The petition sets forth a possessory action, a petitory action, and an action in slander of title. The defendant Bowie Lumber Company, Ltd. and its mineral lessees filed an exception of want of possession claiming that the claimants have never been in possession of the property, which exceptions were maintained by the Lower Court. The suit was then resolved into a petitory action which, after trial below, resulted in a judgment in favor of defendant dismissing petitioners’ suit. The petitioners have taken this appeal.
The property in controversy is described as follows:
A certain tract of land situated in the Parish of Lafourche, State of Louisiana, in the place known as Vacherie Dugue Livaudais, designated as Number Twenty-two (No. 22) on a certain plan drawn by Bougerol, Deputy Surveyor of the United States, under date of August 25, 1835, a copy of which has been filed in the office of the Clerk of Court of Lafourche Parish, Louisiana, under entry number 136,366, which tract No. 22 measures 143 superficial arpents, being 40 arpents long by a average breadth of 3J4 arpents; bounded formerly at one end by Feli-cien Thibodaux and at the other end by lands of Thomas M. Williams. Said tract being situated in Section 116, Township 15 South, Range 18 East, Lafourche Parish, Louisiana, and being the same property acquired for the estate of the minor, Thomas Locke Hyde, by Nathaniel C. Hyde, from Francois Joseph Enoul Dugue Livaudais, et al., on May 29, 1841, by act of sale recorded in Conveyance Book R, page 124, official records of Lafourche Parish, Louisiana.
The petitioners claim a record title to the said property by intestate inheritance from a long-lost relative who supposedly acquired the property during the year 1840 at the age of two years.
The only issue before the Court is the petitory action. The defendants’ answer, in alternative form:
A. Denies the plaintiffs’ claim to title.
B. Alleges a superior title in themselves.
C. Claims ownership by virtue of 10 and 30 years acquisitive prescription.
D. Alleges that petitioners are barred from accepting the Succession of Thomas Locke Hyde, their alleged ancestor, by the prescription of 30 years.
E. Claims that should the Court find a defect in defendants’ 1905 tax deed, such defect was cured by the prescription of peremption of three to five years and the liberative prescription of 13 years.
The Lower Court, in a well reasoned opinion, held that the defendants have shown the necessary possession for 30 years acquisitive prescription, and that it was therefore not necessary to delve into the alternative defenses set forth by the defendants.
On appeal the petitioners admit that the defendants have possessed the property as owners since the year 1934, when a fence was erected around the property in question. Therefore the only dispute as to possession by the defendants would be prior to the year 1934, for a minimum period of six years which would show the thirty year acquisitive prescription. Inasmuch as the petitioners have never possessed the property, they introduced no witnesses to show any possession in themselves. Lot No. 22, which is the land involved in this suit, comprises 122 acres of wild swamp land which is subject to periodic overflow and is located in a cypress swamp approximately two miles northwest of Raceland, in the Parish of Lafourche, Louisiana. It is not *682 susceptible to cultivation or habitation, however, it is suitable to some extent for trapping, cattle grazing, timber cutting, and possible mineral development. Lot 22 is situated within the confines of other property owned by Bowie Lumber Company Ltd. which is bounded on the east by the Bowie Canal, which terminates on its southern end in what was known .as the Mill Pond. At its northern end, Bowie Canal runs into Bayou Boeuf, which runs in a southwesterly direction into Lake Boeuf. Theriot Canal runs south from Lake Boeuf to the Halpen Canal which runs in an easterly direction into the Bowie Canal just a short distance above the Mill Pond. Between Lot 22 and Lake Beouf is the Coteau De Gru Ridge which runs generally in a northeasterly, southwesterly direction a-short distance to the west of Lot 22. The Henry Canal runs northwesterly from the Mill Pond to Lake Boeuf and crosses the southern half of Lot 22. The evidence reflects that several years ago the Bowie Lumber Company maintained a lumber mill next to the Mill Pond. This lumber mill was one of the largest in the State of Louisiana, and there was extensive lumber operations in this general area. This lumber mill and the Mill Pond were situated just a short distance to the southeast of the property in dispute.
“That there may be physical possession of marsh land is not open to inquiry. The possession of marsh land contemplated by law is that which is commensurate with its nature, its chief value, and by the extent of operations conducted thereon which the character of the soil and surroundings may reasonably permit.” Acosta v. Nunez, 5 So.2d 574, (La.App.1942)
“There may be physical possession of swamp lands. The value of the land is in the trees. To cut them down and take them away requires considerable preparation and the úse of different appliances. * * * The sound of the woodman’s ax is heard; the stir of the hands; the swamp boat going up and down the small streams; its resounding whistle heard; all go towards denoting possession.” South Louisiana Land Company v. Riggs Cypress Co., 119 La. 193, 43 So. 1003 (1907).
“The possession necessary for this species (30 years) of prescription, when it has commenced by the corporal possession of the thing, may if it has not been interrupted, be preserved by external and public signs, announcing the possessor’s intention to preserve the possession of the thing, as the keeping up of roads and levees, the payment of taxes, and other similar acts.” Art. 3501, LSA-Civil Code.
“A man may even retain the civil possession of an estate sufficient to prescribe, so long as there remain on it any vestiges of works erected by him, as, for example, the ruins of a house.” Art. 3502, LSA-Civil Code.
So held: Thompson’s Succession v. Cyprian, 34 So.2d 285 (La.App.1948).
“Stumps and tops remain on the land as vestiges of these acts of possession * * *_» Neilson v. Haas, 199 So. 202 (La.App.1941).
The defendants introduced some 35 witnesses who testified as to various aspects of possession exercised over the property by the defendants from approximately 1912 until the present time. These aspects of possession included the .raising of cattle and hogs, the cutting of timber and cross ties, trapping, patrolling and posting of signs, as well as mineral leasing and geophysical operations. There was fencing constructed by the defendants along the Henry Canal to keep the cattle from entering the said canal where they would get bogged down during the year 1916. During the year 1934 a fence was constructed completely surrounding Lot No. 22. The record discloses that there was dredging of the Henry and Bowie Canal by the defendants as early as 1903. These operations *683 were performed on what was known as the Bowie Swamp, which is the marsh area surrounded by Lake Boeuf and the various canals which we have mentioned above, approximately in the center of which is situated Lot 22.
Mr. Julian Leray who was 78 years of age and retired at the time of the trial testified that he worked for Mr. J. W. McClel-land from 1928 until Mr. McClelland’s death during 1933, after which he went to work for Bowie Lumber Company, Ltd. At the time that Mr. Leray worked for Mr. Mc-Clelland, Mr. McClelland had a contract from Bowie Lumber Company to conduct cross tie operations in the swamp, which operations were conducted from January 1st of 1927 until the death of Mr. Mc-Clelland in 1933. Mr. McClelland also had a trapping lease from Bowie Lumber Company. Mr. Leray testified that he was familiar with Lot 22 and that his job was to patrol this swamp and to supervise the trapping and cross tie operations of Mr. McClelland. He stated that Lot 22 was a part of the property upon which these operations were conducted.
Mr. John Granier, a gentleman of 73 and retired at the time of trial, testified that he worked cattle on the Bowie property and helped conduct geophysical operations thereon some 30 or 33 years ago. While employed by Bowie, he helped build a fence along the Henry Canal from the Mill Pond to Coteau De Grue. Pictures were introduced which identified Mr. Granier as conducting geophysical operations on these lands.
Mr. Ulyssee Babin, who was 47 years of age and a road contractor at the time of the trial, testified that he went to work for Bowie when he was only nine years of age and worked from 1921 to 1946.- During 1921 Mr. Maville Rome was in charge of the cattle operations under whom Mr. Bab-in worked as a cattleman. After Mr. Rome’s death, some seven years later, Mr. Babin was put in charge of the cattle operations. His testimony was to the effect that the Bowie cattle grazed in the swamp lands between the Henry and Bowie Canals., They conducted dairy operations on the swamps which were generally regarded as belonging to Bowie Lumber Company. In addition they would cut fire wood from the, property in question. He also testified that, a Mr. Granier and Mr. Constant trapped, the property under contract from Bowie. Lumber Company.
Mr. Gerard Reddy, 85 years of age and a retail lumber merchant testified that he worked for Bowie Lumber Company from about 1874 to July of 1917, when the lumber mill burned. He was superintendent of manufacturing at the lumber plant, which was 'one of the largest in the State of Louisiana. He testified that the Henry Canal was dredged by Bowie during the year 1903 with a steam dredge, and the spoil was dumped on each side of the canal. This canal runs through the southern half of Lot No. 22. He further testified that, with the permission of Bowie, he grazed several hundred hogs between the Mill Pond and Lake Boeuf for the five year period preceding 1917. He stated that this swamp was generally known as the Bowie property and that, to his knowledge, no one else claimed it.
Mr. Felix Peltier, 69 years of age and retired, testified that he moved to the Coteau Camp located on the Bowie property when he was 20 years of age. During the year 1912 there was a flood which was called the Hymelia Crevasse, which covered the property in question by some eight to ten feet of water. Mr. Peltier testified that he, along with other employees of Bowie, cut cypress trees from a pirogue in water seven to eight feet deep and then floated the logs to the Mill Pond. Mr. Lulu Tabor also testified as to the Hymelia Crevasse, and that he was one of the loggers cutting the cypress trees from a pirogue. Pictures have been introduced into the evidence which show the stumps of these trees standing some eight to ten feet above the surface of the ground.
*684 The above represents only a small portion of the evidence which was introduced by defendants to substantiate possession. While some of these witnesses testified that they could distinguish Lot 22 and the various acts of possession which were conducted thereon, other of the witnesses just testified that these operations were conducted throughout the Bowie swamp, from the Bowie Canal to Lake Boeuf in which area lot 22 was situated.
Considering the multitude of evidence of possession which was introduced by the defendants, we feel that the Lower Court was on sound legal grounds when it held that the defendants had exercised sufficient possession over the property for the running of acquisitive prescription. In Continental Land and Fur Co. v. Lacoste, 192 La. 561, 573, 188 So. 700, the Court, in upholding the 30 year prescription, stated “ * * * it is not necessary for a person who takes possession of a tract of land to build a fence around it, in order to fix the boundaries of what he intends to possess, if the limits of his possession are marked by natural boundaries and if he actually possesses or uses all of the land within the boundaries.” In this case the Court held that the grazing of cattle was sufficient possession. Mr. Ulyssee Babin testified that he personally watched the cattle of Bowie grazing all over this property from the year 1921 until 1946.
In Buckley v. Dumond, La.App., 156 So. 784 the Court held that the trapping of swamp lands under contract with the owner, constituted possession of said lands by the owner and showed the “intention on the part of the owner to thereby take and commence the real, actual possession of the land.”
The petitioners on appeal have raised the question of a “tax subrogation”, issued by the tax collector on September 24, 1912. This instrument shows payment by Bowie of taxes on the disputed property assessed for the year 1904 in the name “unknown owners”, and petitioners maintain that this constitutes an acknowledgment by Bowie that they were not the owners of the property and were, therefore, not possessing same as owner. The record, however, discloses that Bowie has paid taxes on the property by virtue of assessments in its own name from the year 1905 up until the filing of the present suit. Even were we to concede that this instrument is as characterized by petitioners, certainly the record contains sufficient evidence to satisfy 30 year prescription.
We are in full accord with the opinion of the Lower Court, and judgment will be rendered accordingly.
For the reasons hereinabove assigned, the judgment of the Lower Court is affirmed, all costs of this appeal to be paid by petitioners.
Judgment affirmed.